UNITED STATES of America,
Plaintiff-Appellee,

v.

Byron Hugh JOHNSON and Allan Golub,
Defendants-Appellants.

No. 29471.

United States Court of Appeals,
Fifth Circuit.

March 16, 1971.

Rehearing Denied April 7, 1971.

**886**

Sam F. Adam, Santo J. Volpe, Edward M. Genson, Charles O. Brizius, Chicago, Ill., for appellants.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Edward B. McDonough, Jr., Theo W. Pinson, III, Asst. U. S. Attys., Houston, for appellee.

Before RIVES, AINSWORTH and MORGAN, Circuit Judges.

RIVES, Circuit Judge:

Byron Hugh Johnson and Allan Golub, appellants, and one Darrell McDonald were indicted under 21 U.S.C. § 176a [1] on three counts. Count One charged conspiracy, from about October 11, 1968 to about November 6, 1968, to smuggle marihuana into the United States; Count Two charged the substantive act of smuggling; and Count Three charged that the defendants knowingly transported and facilitated the transportation of marihuana knowing it to have been imported into the United States contrary to law. McDonald was acquitted on all counts. Golub and Johnson were convicted on all counts, and sentenced to five years' imprisonment on each, the sentences to run concurrently.

Customs Agent Christopher testified that in early October 1968 an unnamed man informed him of overhearing a conversation in Provincetown, Massachusetts, between Johnson and another man, in which Johnson told this man that he was planning a trip to Mexico in his 1957 Chrysler station wagon in which he had built special compartments to transport marihuana. The informer also stated that the vehicle had Florida registration plates numbered 10 W 1813.

1. In pertinent part the section reads:

"Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned for not less than ten or more than forty years and, in addition, may be fined not more than $20,000.

"Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury."

Christopher's testimony was admitted over Johnson's objection, but the court instructed the jury that the testimony was admitted not for the truth of the informer's statements but only to show why the agents were on the lookout for Johnson. The Chrysler was later transported to Chicago and left in a garage for repair work.[2] Agent Christopher relayed the information from the informer to the border guards in Texas and a lookout for Johnson was maintained.[3]

The three defendants entered Mexico on October 28, 1968 and their tourist permits bore consecutive numbers. A hotel manager, Juan Jose Gonzalez Guajardo, identified McDonald and Johnson and testified that they arrived at his hotel in Matamoros, Mexico, at 9:55 P.M., November 5, 1968. He saw Johnson in a 1964 station wagon which he described as a Dodge. McDonald paid for a room for the two. Guajardo did not see who was driving the vehicle when the two men arrived and he never saw Golub. Guajardo wrote down the license number of the vehicle on the hotel registration. He saw Johnson the next morning but did not see McDonald or the vehicle.

Another manager at this hotel, Elroy Gonzalez Acebo, identified Johnson as a man he saw on the morning of November 6, 1968, coming out of the room which McDonald had rented. He identified a hotel record on which he had written the license number of the station wagon from a report made previously by the other manager.[4]

Johnson returned to the United States from Mexico by foot on November 7, 1968, approximately at 1:10 P.M. He

was searched at the Brownsville customs office but no marihuana was found on him. Johnson was kept under observation by customs officials as he took a bus to San Antonio, Texas, and from there flew to New York and on to Boston. This flight was made on November 8, 1968. Johnson was arrested on November 15, 1968 in Chicago, when he went to the garage to pick up the 1957 Chrysler. He did not claim the vehicle or enter it prior to his arrest. The vehicle was seized; a search of the vehicle turned up butts of marihuana cigarettes and marihuana seeds and the existence of the secret compartments. The fruits of this search were admitted in evidence over objection.

Around midnight of November 5, 1968, about two hours after registering at the hotel, McDonald arrived at the Gateway Bridge inspection point in a Mexican taxi. Customs Inspector Charles Easley searched him and detected the odor of marihuana in a laundry bag, though no marihuana was found. McDonald had a Mexican car permit made out to Golub for a 1964 Plymouth. Easley testified that McDonald gave him conflicting stories about his visit to Mexico and about the vehicle. Easley contacted a Treasury Agent from the Bureau of Customs, E. T. Laurel, and Laurel placed McDonald under surveillance when he entered the United States in the taxi. Two other agents assisted in the surveillance.

While following the taxi, Agent Laurel noticed parked at a curb a cream-colored station wagon with an Illinois license plate which he recalled as bearing the same number which Easley had read to

2. It was the government's theory that the vehicle got to Chicago as part of the defendants' trip to Mexico. However, the only evidence showing how or by whom the vehicle was transported to Chicago was contained in a confession by Golub which was never introduced in evidence.

3. The agent later verified that Johnson possessed the vehicle so described.

4. The license number is referred to in the transcript as SR 76785 and as SR 6785

[T. 156, 160] The customs agent who searched the vehicle in which McDonald and Golub were apprehended testified that the license number on the vehicle was SR 6785. Appellants do not challenge the identification of the vehicle. Any doubt to which the discrepancy in license numbers might give rise is laid to rest by the testimony of Guajardo identifying pictures of the searched vehicle as depicting the vehicle he saw at the hotel. [T. 238, 146.]

him from the Mexican car permit in McDonald's possession. Agent Laurel maintained surveillance on this vehicle while the other agents followed the taxi. The station wagon began following the taxi. Eventually, both vehicles stopped and McDonald got out of the taxi and into the station wagon. The agents continued to follow the station wagon for five miles. When it headed out of the city, they stopped it some seven to ten miles from the border. The vehicle and its occupants, McDonald and Golub, were returned to the checkpoint for a search. One hundred seven pounds of marihuana were found concealed in hidden compartments in the vehicle, and McDonald and Golub were placed under arrest.

## I.

 Johnson insists that the district court erred in allowing Agent Christopher to testify as to what an informer told him without requiring the government to reveal the name of the informer. The government argues that it is entitled to withhold the name of the informer based on the public policy of encouraging people to give information to the police. Scher v. United States, 1938, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151. The government's privilege to withhold the identity of an informer is subject to limitations. *See* Roviaro v. United States, 1957, 353 U.S. 53, 60–63, 77 S.Ct. 623, 1 L.Ed.2d 639; Firo v. United States, 5 Cir. 1965, 340 F.2d 597. However, we need not decide whether the privilege applied under the facts of this case, because we hold that, in any event, the statements of the informer were inadmissible and prejudicial hearsay.

The government argues that the testimony was not hearsay because it was introduced solely to show that the customs agents were on the lookout for Johnson, not to show the truth of what the informer said. That is the reasoning which the district court accepted, and instructed the jury accordingly.

Realistically considered, that reasoning must fail.

The statements of the informer are the most substantial evidence the government has to establish Johnson's intent to enter into a conspiracy. Proof of an agreement to enter into a conspiracy is not to be lightly inferred. United States v. Aviles, 2 Cir. 1960, 274 F.2d 179; Evans v. United States, 9 Cir. 1958, 257 F.2d 121, cert. denied, 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99; United States v. Varelli, 7 Cir. 1969, 407 F.2d 735. If a conspiracy had been shown, there may have been sufficient proof to establish that it was put into execution. But our examination of the record leads us to the conclusion that the overt acts the government speaks of in its brief did not prove the existence of a conspiracy insofar as Johnson is concerned.

The distinction between using anonymous information corroborated by police investigation and the impermissible use of hearsay to establish the proof of an offense is illustrated by United States v. Catanzaro, 3 Cir. 1969, 407 F.2d 998. There, an entrapment defense was argued in a case charging that the accused had sold amphetamine tablets to a Food and Drug Inspector. An informer, by the name of Maskell, introduced the inspector to the accused. Hearsay testimony was introduced showing that Maskell had told the inspector that the accused was a seller of drugs. The Third Circuit reversed the conviction because the hearsay went to prove the predisposition on the part of the accused to make an illegal sale. The Court said, "Accordingly, when such evidence is inadmissible hearsay on the critical issue of predisposition, it may not be admitted into evidence because of its relevance on the inconsequential issue of probable cause." 407 F.2d 998, 1001. We agree with the reasoning of the court in *Catanzaro* and hold that the hearsay testimony was improperly admitted because it went to prove the intention of Johnson to participate in a conspiracy. The desire of the government to show the jury why its

agents were on the lookout for Johnson can in no way justify the use of prejudicial hearsay.

The government next argues that the statements of the informer at most constituted harmless error under Fed.R. Crim.P. 52(a). Erroneous admission of evidence can often be corrected by appropriate jury instructions. Conner v. United States, 5 Cir. 1963, 322 F.2d 647. But before a constitutional error can be held harmless, the court must believe it harmless beyond a reasonable doubt. Chapman v. California, 1967, 386 U.S. 18, 22–24, 87 S.Ct. 824, 17 L.Ed.2d 705.

The statements of the informer related statements allegedly made by Johnson concerning his intention in connection with another person to bring marihuana into this Country. Under any standard the informer's statements were highly prejudicial to Johnson. They tended to establish the conspiracy and to prove Johnson's knowledge of and intention to be involved in a smuggling operation. Under the circumstances of this case, there is more than a substantial risk that the jury, despite instructions to the contrary, looked to the informer's statements in determining Johnson's guilt. See Bruton v. United States, 1968, 391 U.S. 123, 129, 130, 88 S.Ct. 1620, 20 L.Ed.2d 476.

There was no other substantial evidence to prove Johnson guilty. The record shows that he entered Mexico at approximately the same time as McDonald and Golub. He checked into a hotel with McDonald and was seen in the vehicle in which the other two defendants were later arrested. The next morning, November 6, 1968, approximately at 10:00 A.M., Johnson was seen loading two green, canvas, GI-type duffel bags into a taxi.[5] He left in the taxi and returned some time later. He got two

suitcases from his hotel room and again left in a taxi. At 1:10 P.M. the next day he arrived at the border carrying one small suitcase. Johnson's movements from that time until his arrest and the circumstances of his arrest have been detailed. We cannot hold the admission of the informer's statements through hearsay to be harmless. For the error in admitting those statements, Johnson's judgment of conviction must be reversed.

## II.

The details of Golub's apprehension and the search of his car have been stated. It is familiar law that border officials need less cause to initiate a search than is required of law enforcement officials in other circumstances. Marsh v. United States, 5 Cir. 1965, 344 F.2d 317, 324; Ramirez v. United States, 5 Cir. 1959, 263 F.2d 385; King v. United States, 5 Cir. 1958, 258 F.2d 754. The facts here—the suspicion aroused when McDonald crossed the border, McDonald's connection with the vehicle Golub was driving, the clandestine meeting of the two men—clearly justified the search of the station wagon in which they were riding.

Since that search was legal, there was sufficient evidence to support the conviction of Golub under Counts One and Three of the indictment which charged the illegal importation of marihuana and its transportation and concealment within this Country. Golub's possession of the vehicle and the proof that it was in Mexico only hours before his apprehension furnish overwhelming evidence of his guilt.

Golub also argues that his conviction must be reversed under the decision in Leary v. United States, 1969, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d

---

5. The two duffel bags seen in Johnson's possession were similar to the one which McDonald carried into the United States that smelled of marihuana. Neither of the bags Johnson had could have been the one McDonald carried nor could the bags

have contained the marihuana seized when McDonald and Golub were arrested, since McDonald entered the Country and he and Golub were arrested nine or ten hours prior to the time Johnson was seen carrying the bags.

57. Since this case comes to us on direct appeal, the ruling in *Leary* is applicable if the facts bring it under that decision. United States v. Scardino, 5 Cir. 1969, 414 F.2d 925; Medina v. United States, 5 Cir. 1970, 427 F.2d 525.

*Leary* invalidated the presumptions of 21 U.S.C. § 176a that possession of marihuana is sufficient to show that (a) the marihuana was illegally imported and (b) that the possessor had knowledge of the illegal importation. But *Leary* does not invalidate convictions obtained under this statute when the defective presumption was not used. United States v. Pruneda, 5 Cir. 1970, 425 F.2d 1289; United States v. Rodriguez Reinosa, 5 Cir. 1970, 427 F.2d 150. A careful examination of the record in this case reveals no reliance on the invalid presumption. That paragraph of the statute containing the presumption was not read to the jury nor was there any instruction as to presumption to be drawn from possession.

### III.

■ The appellants attack the seizure and search of the 1957 Chrysler station wagon from which there followed the admission into evidence of the marihuana debris it contained and the references to its secret compartments. The resolution of this issue is not necessary for the disposition of this appeal since we hold that Johnson's conviction must be reversed on other grounds and that the use of this evidence against Golub was harmless error.[6]

6. As has been seen, the evidence against Golub on the substantive counts of the indictment was overwhelming. While the evidence of the Chicago vehicle, as well as the introduction of the hearsay testimony, might be prejudicial to Golub under the conspiracy count, we need not decide this issue because Golub received concurrent sentences of five years on each of the three counts and this does not

### IV.

■ Appellants' contention that the requirements of declaration and invoicing by 21 U.S.C. § 176a are unconstitutional as violative of the privilege against self-incrimination is without merit. This contention was decided against appellants in Rule v. United States, 5 Cir. 1966, 362 F.2d 215. The language of Walden v. United States, 5 Cir. 1969, 417 F.2d 698, which followed *Rule*, is controlling in this case:

> "Had Walden declared and invoiced the marihuana at the border, it would have been immediately seized by Customs. At that point Walden would not have been vulnerable to prosecution, either Federal or State, because he would have complied with the Federal law and he would have never reached the State of Texas with marihuana in his possession."

Walden v. United States, 417 F.2d 698, 700.

■ Appellants, relying on Dennis v. United States, 1966, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973, also contend that their motion for the production of the grand jury testimony should have been granted. Appellants have failed to meet the requirements of *Dennis* that a "particular need" for the disclosure of the grand jury proceedings be demonstrated.[7]

The judgment of conviction of Johnson is reversed and that of Golub is affirmed.

Reversed and remanded as to Johnson, affirmed as to Golub.

exceed the maximum permitted on the other two counts. See Benton v. Maryland, 1969, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707; Hirabayshi v. United States, 1943, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774.

7. Dennis v. United States, 384 U.S. at 868–875, 86 S.Ct. 1840.