**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Belmer Lewis WRIGHT, Jr., Defendant-Appellant.**

No. 72–3137

**Summary Calendar.\***

United States Court of Appeals, Fifth Circuit.

Feb. 27, 1973.

Rehearing Denied March 28, 1973.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of

New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

pounds of marijuana, a violation of 21 U.S.C.A. § 841, Appellant Wright raises only one contention—that the search of his vehicle which produced the voluminous quantities of the forbidden weed was violative of the guarantees of the Fourth Amendment, even under the broad "border search" rubric. We hold that the instant search falls well within the bounds of the border search doctrine and, accordingly, affirm.

Appellant and a female companion were stopped by agents of the Immigration and Naturalization Service at a point approximately 11 miles north of Laredo, Texas, and the Mexican border. According to the testimony of Immigration Officer James W. Knight, the officers' suspicions were somewhat aroused by the presence of a spare time in the back of Appellant's 1971 Ford station wagon. This seemingly harmless factor was suspicious when viewed through the eyes of these officers because of their knowledge and experience that spare tire wells were often used to conceal aliens. Officer Knight requested the Appellant to open the rear door of the station wagon. Looking inside the vehicle, the Officer saw that the floor deck was covered by a white cloth. He pulled back the cloth and opened the rear seat compartment which was under it.[1] Officer Knight observed several large heavily wrapped, plastic covered bundles in this compartment. Detecting an odor of marijuana, he promptly placed the Appellant under arrest. Upon further inspection it was determined that the bundles contained the marijuana.

---

Sam Houston Clinton, Jr., Austin, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., Dan Alfaro, Asst. U. S. Atty., Laredo, Tex., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

PER CURIAM:

On appeal from a conviction of possession with intent to distribute 319

---

1. Actually the compartment was designed to hold the fold-down third rear seats. Being unfamiliar with the design on a 1971 Ford station wagon, Officer Knight did not know that this was not the spare tirewell. Of course this simple factual mistake has no bearing on the validity of the search—Immigration agents are authorized by law to search any compartment where an unauthorized alien might be concealed. Thus, 8 U.S.C.A. § 1357 (a) (3) gives immigration officers the authority:

"(3) within a reasonable distance from any external boundary of the United States, to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle, and within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States."

■ It is a well-settled principle of law in this Circuit that Immigration Officers may search any vehicle which they have a reasonable suspicion to believe may contain aliens. United States v. McDaniel, 5 Cir., 1972, 463 F.2d 129; United States v. De Leon, 5 Cir., 1972, 462 F.2d 170; United States v. Maggard, 5 Cir., 1971, 451 F.2d 502; United States v. Bird, 5 Cir., 1972, 456 F.2d 1023. The test is not one of probable cause, but "reasonable suspicion". "In substance, the term 'border search' is merely a short-hand method of stating that a search is, under the circumstances, a 'reasonable' stretch of the usual Fourth Amendment standard of 'probable cause' because of the proximity of an international frontier and other attendant factors." McDaniel, supra, 463 F.2d at 132.

■ In his excellent brief on appeal, Appellant seeks to distinguish McDaniel on several grounds. First, he suggests that because the internal check point therein was merely a temporary one rather than the permanent one in McDaniel there is less of a right to search. We fail to see the logic in this distinction, for, as we have stated, the Immigration Officers are authorized by statute and regulation to search at any point within a "reasonable distance"[2] from the border line. The effectiveness of the Border Patrol would be greatly diminished if the law required them to become creatures of their own habit.

■ Appellant also suggests that McDaniel requires "something more than just the stop before approving a search for aliens." Under McDaniel, a border search for aliens may be conducted if, in light of all the apparent facts at the time, government agents have adequate grounds for a reasonable suspicion that illegal aliens may be concealed within the vehicle, United States v. McDaniel, supra, at 133. In this case, Officer Knight's observation of a spare tire in the luggage compartment of the station wagon coupled with his knowledge that spare tire wells were often used to conceal aliens, justified his decision to open the rear compartment.

While the Immigration Officers are powerless to search bound bags too small to conceal aliens under the auspices of their immigration badges, the Court below found, as in McDaniel, supra, that Agent Knight and his partner had two badges—they were not only agents of the Immigration and Naturalization Service, but were also authorized Customs Officers. As such, they are authorized to search any package which they may have a reasonable suspicion to believe contains merchandise which was imported contrary to law.[3] Thus, it

---

2. "The term 'reasonable distance,' as used in [8 U.S.C.A. § 1357(a)(3)] of the Act, means within 100 air miles from any external boundary of the United States or any shorter distance which may be fixed by the District Director." 8 C.F.R. § 287.1(a)(2). Of course mere presence within the hundred mile limit of the border does not, without more, justify all searches. See Carroll v. United States, 1925, 267 U.S. 132, 154, 45 S.Ct. 280, 285, 69 L.Ed. 543, 552; Marsh v. United States, 5 Cir., 1965, 344 F.2d 317, 324.

3. In order to foreclose the possibility that any wolf could slip by the border in sheep's clothing, Congress has granted extensive authority to the Customs Agents for the search of vehicles, beasts and persons:
    "Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or

was perfectly permissible for the Agents to convert what began as a search for aliens into a detailed search for contraband. *McDaniel, supra* at 134.

Affirmed.

charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial."

19 U.S.C.A. § 482. See also 19 U.S.C.A. § 1581; United States v. Caraway & Scales, 5 Cir. 1973, 474 F.2d 25.