UNITED STATES of America, Plaintiff-Appellee,

v.

David Jefferies THOMPSON, Defendant-Appellant.

No. 72-2690.

United States Court of Appeals, Fifth Circuit.

March 29, 1973.

---

2. See also, Sen.R.No.146, 89th Cong., 1st Sess., 1965 U.S.Code Cong. & Admin.News, pp. 1456–1457.

Francis P. Maher, Laredo, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before COLEMAN, MORGAN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Defendant David Jefferies Thompson was charged with knowing possession of 50 pounds of marijuana with intent to distribute, in violation of 21 U.S.C.A. § 841(a)(1). A motion to suppress the marijuana as the product of an illegal search was denied. By stipulation, the evidence on the motion to suppress was considered by the Court on the merits of the case. Defendant was found guilty. On appeal, Thompson contends that the motion to suppress should have been granted for one of three alternative reasons: *first*, the designation by the Bureau of Customs of a border patrol officer as a customs agent to clothe him with border search investigative power based on "mere suspicion" is unconstitutional, *second*, the search of defendant's automobile was not justified as a border search, and no probable cause was presented otherwise to authorize a warrantless search, and *third*, defendant should have been given the *Miranda* warnings before he was required to open the trunk of his automobile for the officer. Finding that the marijuana was discovered during a valid border search and that defendant's legal points are without merit, we affirm.

I. *Border Search Investigative Powers*

█ Thompson admits that Congress has granted customs agents broad authority to stop and search any person or vehicle suspected of carrying merchandise illegally imported into the United States. This authority has been interpreted by the Courts to permit a border search for contraband, without first procuring a search warrant, where there is a "mere suspicion" of possible illegal activity. *See* United States v. Wright, 5th

Cir. 1973, 476 F.2d 1027, [No. 72–3137, February 27, 1973]; United States v. McDaniel, 463 F.2d 129 (5th Cir. 1972). But, Thompson argues, Congress has granted this authority only to the Secretary of the Treasury and his designated customs officials and has not authorized the delegation of such authority to other police groups by the Bureau of Customs. Only Congress is empowered by the Constitution to "vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." Article II, Section 2, Clause 2. Since there is no general federal police power, any exercise of such power by a federal agency must be specifically authorized by Congress. Any police power authorized by Congress cannot be constitutionally transferred from one agency to the other. Therefore, Thompson says, it is unconstitutional for the Bureau of Customs, a division of the United States Treasury Department, to delegate to the officers of the Border Patrol, a division of the United States Department of Justice, the power to conduct the kind of search that Congress has authorized to customs officials alone.

Thompson misconceives the situation. The officers who made the search of his automobile, although primarily border patrol officers, were also designated as customs agents and could conduct a customs search as customs officers. There was no mere delegation of authority to border patrol officers, as such. A review of these two distinct offices, which may be held by a single person, will be helpful.

Customs agents are officials of the Bureau of Customs, under the supervision of the Secretary of the Treasury. 19 U.S.C.A. § 6. Border patrol officers are employees of the Immigration and Naturalization Service, under the supervision of the United States Attorney General. 8 U.S.C.A. § 1103.

The investigative powers of the two law enforcement organizations are dissimilar. *Customs agents* exercise broad

statutory authority in border searches for merchandise concealed to avoid payment of duties. *See* 19 U.S.C.A. §§ 482, 1496, 1581(a), 1581(b); 19 C.F.R. §§ 23.1(d), 23.11. Border searches, absent search warrants or probable cause, have been uniformly upheld by the Courts as long as the customs agents have had a reasonable suspicion of violations of the customs laws. *See* United States v. Salinas, 439 F.2d 376 (5th Cir. 1971); United States v. Tsoi Kwan Sang, 416 F.2d 306 (5th Cir. 1969); Stassi v. United States, 410 F.2d 946 (5th Cir. 1969), vacated and remanded on other grounds sub nom. Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); Morales v. United States, 378 F.2d 187 (5th Cir. 1967). This inconvenience to travelers is justified by the national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. *See* Carroll v. United States, 267 U.S. 132, 154, 45 S. Ct. 280, 69 L.Ed. 543 (1925).

■ Border patrol officers are authorized to search any vehicle in which they believe aliens are being brought into the United States. 8 U.S.C.A. § 1225. If the car can reasonably be stopped pursuant to an authorized border search, the border patrol officers are empowered to search the car for aliens. United States v. Wright, *supra*; United States v. DeLeon, 462 F.2d 170 (5th Cir. 1972); Ramirez v. United States, 263 F.2d 385 (5th Cir. 1959). Border patrol officers do not have the authority, under the immigration laws, however, to search bags, containers, or compartments too small to conceal persons. *See* Roa-Rodriguez v. United States, 410 F. 2d 1206 (5th Cir. 1969); Contreras v. United States, 291 F.2d 63 (9th Cir. 1961); *see also* United States v. Wright, *supra*; United States v. Bird, 456 F.2d 1023 (5th Cir. 1972).

■ Immigration inspections by border patrol officers may be made at any point within 100 miles of the external boundary. 8 U.S.C.A. § 1357; 9 C. F.R. § 287.1. Although the nation's borders are also expandable for searches by customs agents, *see* United States v. Hill, 430 F.2d 129 (5th Cir. 1970); Thomas v. United States, 372 F.2d 252 (5th Cir. 1967); Marsh v. United States, 344 F.2d 317 (5th Cir. 1965), the customs statutes and regulations do not prescribe precise geographic limitations. Customs searches, therefore, are subject only to the constitutional test of reasonableness. 19 U.S.C.A. § 482; *see* United States v. Wright, *supra;* United States v. Hill, *supra.* Searches in this undefined zone must be reasonable upon all of the facts, one consideration being the proximity of the search to an international border. *See* United States v. McDaniel, *supra.* When acting in this expanded border search area, the customs agents must have a "reasonable suspicion" that the customs laws are being violated. *See* United States v. McDaniel, *supra.*

By a series of proper delegations, border patrol officers have been designated by the Treasury Secretary as customs agents. "[A]ny officer of the Bureau of Customs of the Treasury Department . . . or any commissioned, warrant, or petty officer of the Coast Guard, or any agent or other person authorized by law or designated by the Secretary of the Treasury to perform any duties of an officer of Customs Service . . . ." serves as a customs agent. 19 U.S.C.A. § 1401(i). Under Treasury Dept. Order No. 165, Revised, 19 Fed.Reg. 7241 (T.D. 53654, 1954), empowering the Commissioner of Customs to act on behalf of the Treasury Secretary, the Commissioner delegated to special agents of the Bureau of Customs the authority to designate border patrol officers as "acting Customs Patrol officers," without compensation. Customs Delegation Order No. 42, 36 Fed.Reg. 13410 (T.D. 71-181, 1971). By letter/order of the Assistant Commissioner of the Bureau of Customs, dated July 14, 1971, all special agents were required to designate all current

border patrol officers and future appointees as acting customs patrol officers.

■ This Court has often recognized that a border patrol officer may be validly authorized to act simultaneously as a customs agent. *See* United States v. Wright, *supra;* United States v. McDaniel, *supra;* United States v. Bird, *supra;* United States v. Maggard, 451 F.2d 502 (5th Cir. 1971). As Judge Goldberg said in *McDaniel*,

It appears that Border Patrol agents wear two hats, one as an immigration officer and the other as a customs officer. The agents testified *that they had planned to wear their* immigration hats that night, but we find nothing in the statutes that would preclude them from later donning their customs hats during a proper border search.

463 F.2d at 134. Defendant has not presented any impediment to the appointment of one individual to two *offices established by Congress. Although* some state constitutions expressly prohibit such dual appointments, there is nothing in the United States Constitution which prevents it. Nor is there any statutory or inherent conflict between the two positions.

Since the officers were authorized to conduct the broadest kind of border search, *the question is whether the facts* justified that minimum amount of reasonable suspicion necessary to support the border search of defendant's automobile.

## II. *Search of the Automobile*

In the morning darkness of April 26, 1972, border patrol officers Jose E. Garza and Harold A. Sandstede, who were also designated as special customs agents, were in Hebbronville, Texas, to observe traffic coming from the Mexican border some fifty-five miles away. Their mission was to detect aliens who had entered the country illegally.

At approximately 1:30 A.M., defendants, in a car bearing Arkansas license plates, entered Hebbronville from the direction of the border town, Laredo, and turned north on Highway 16 to Freer. Since there are more direct routes to Freer from Laredo, the officers thought it unusual that an out-of-state car would travel this roundabout route. The officers were also aware that the Laredo-Hebbronville-Freer route was frequented by alien smugglers. There was testimony, however, that drivers might have taken a more circuitous route because the Laredo-to-Freer highway was under construction.

The officers stopped the suspects' vehicle about one mile north of Hebbronville. After ascertaining that Thompson and Sipes were United States citizens, the officers requested that Thompson, who was driving, open the trunk for immigration inspection. Thompson replied that he could not do so because the lock was jammed. Sandstede told defendant that the back seat would then have to be removed so that the trunk area could be inspected. Asking whether the officers had a search warrant, Thompson was informed that they did not need one. When they told him that he would be detained until the trunk was opened, Thompson complied.

When Sandstede stepped up close to the trunk to look for illegal aliens, he noticed a plastic bag and smelled marijuana. Inside the bag was marijuana in brick form. The suspects were placed under arrest and given *Miranda* warnings.

The suspects, their vehicle, and the contraband were taken to the Hebbronville Border Patrol Station. After *Miranda* warnings were repeated, defendant stated, upon interrogation, that he had purchased the marijuana in Laredo, that most of the marijuana belonged to him, and that he was planning to sell it in Little Rock, Arkansas.

■ Defendant contends that the search cannot be justified as a border search since it occurred so far from the border and that there was no probable cause otherwise to authorize a warrant-

**1364**

less search. We agree with the Government, however, that the search was justified. The area was within 100 miles of the border. As border patrol officers, Garza and Sandstede were authorized to stop and investigate vehicles for concealed aliens without the rigid requirement of probable cause. *See* 8 U. S.C.A. § 1357; 8 C.F.R. § 287.1; *see also* United States v. Wright, *supra;* United States v. DeLeon, *supra;* Ramirez v. United States, *supra.* Border officials need less cause to initiate a search than is required of law enforcement officials in other circumstances. *See* United States v. Maggard, *supra;* United States v. Johnson, 439 F.2d 885 (5th Cir. 1971); Marsh v. United States, *supra.*

Once the automobile had been reasonably stopped for the purpose of an authorized border search, the officers were empowered to search the vehicle, including the trunk, for aliens. United States v. DeLeon, *supra;* Ramirez v. United States, *supra.* Under these authorities, we have no difficulty in holding that the stopping and initial search of the automobile was justified.

The initial facts that justified the stopping of the car to search for illegal aliens might not have justified stopping the car to search for contraband. But once the defendants resisted inspection of the trunk, the trunk was opened, and the officers smelled marijuana, there was, if not probable cause, at least the minimum grounds for reasonable suspicion necessary to empower the officers, in their capacity as customs agents, to search the plastic bag for contraband. *See* United States v. Wright, *supra;* United States v. McDaniel, *supra;* United States v. Johnson, *supra.*

As border patrol officers, Garza and Sandstede could not have searched the bag because it obviously was too small to have contained aliens, the object of the border patrol search. The officers were entitled to assume their role as customs agents, however, once the search disclosed incriminating circumstances

which indicated violations of the customs laws. *See* United States v. Bird, *supra;* United States v. Maggard, *supra.*

### III. *Miranda Warnings*

Defendant's argument that he should have been given the *Miranda* warnings when he was first detained by the border patrol officers is without merit. The search was legal, and defendant made no self-incriminating statements before he was given the *Miranda* warnings. These warnings have been held to be unnecessary in a routine customs search. United States v. De La Cruz, 420 F.2d 1093 (7th Cir. 1970). Moreover, *Miranda* and the Fifth Amendment apply only to testimonial self-incrimination and not to the production of incriminating physical evidence. *See* Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

We hold that the trial court properly denied defendant's motion to suppress.

Affirmed.