**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard Glynn BYRD, Defendant-**
**Appellant.**
**No. 73-1426**
**Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

Sept. 7, 1973.
As Modified Nov. 8, 1973.

\* Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5 Cir., 1970, 431 F.2d 409.

Warren Heagy, Odessa, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Robert G. Darden, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before BELL, GODBOLD and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Appellant Richard Glynn Byrd was convicted in a nonjury trial of possessing with intent to distribute 300 pounds of marijuana[1] and of carrying a firearm while committing this felony.[2] Byrd seeks reversal of his conviction on the basis that the marijuana was discovered in a constitutionally illegal search and is therefore inadmissible as evidence against him. On the facts of this case, the warrantless search of appellant's vehicle by roving border patrol agents forty-five miles from the Mexican border cannot be upheld. The judgment is reversed.

The facts are typical and undisputed. At 1.30 A.M. on May 9, 1972, Byrd was driving northeast on Highway 59 toward Freer, Texas. At a distance of forty-five miles from the Mexican border at Laredo, Texas, Byrd was stopped by a roving border patrol manned by Officers Escobedo and Lohman of the United States Immigration and Naturalization Service. After ascertaining that Byrd was a United States citizen and had a valid Texas driver's license, Escobedo inspected the rear seat of appellant's car to determine if he was importing illegal aliens into the country. At a time when he had the upper half of his body inside the automobile, he detected the pungent odor of marijuana[3] emanating from somewhere within the vehicle. The officer then obtained the trunk key, opened the trunk, and found that his nose had not betrayed him; 300 pounds of marijuana was discovered in the trunk. After advising Byrd of his *Miranda* rights, the officers were informed that a loaded pistol was under the front seat, which they then recovered.

At trial the only issue was whether the marijuana was discovered in a constitutionally permissible search and thereby admissible as evidence. Officer Escobedo testified that Byrd's car was stopped for a routine immigration inspection. Other than the presence of the car on the highway at an hour when few vehicles were traveling between Laredo and Freer and the officer's knowledge that "many cases" had been made "at that time of morning . . . out there on that particular road," there were no facts to arouse the officer's suspicions that Byrd was transporting illegal aliens. Officer Escobedo said he and his partner would have been just as suspicious of any other vehicle.

1. 21 U.S.C. § 841(a) provides:
    (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
    (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

2. "Whoever, with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, or with knowledge or reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year is to be committed therewith, ships, transports, or receives a firearm or any ammunition in interstate or foreign commerce shall be fined not more than $10,000, or imprisoned not more than ten years, or both."
    18 U.S.C. § 924(b).

3. The odor of marijuana often leads to its discovery. *United States v. Storm*, 480 F.2d 701 (5th Cir., 1973); *United States v. Wright*, 476 F.2d 1027 (5th Cir., 1973); *United States v. Thompson*, 475 F.2d 1359 (5th Cir. 1973).

The district court upheld the search on the basis of a two pronged analysis. First, the court believed that the initial intrusion, the stop, was justified by 8 U.S.C. § 1357(a) and the accompanying regulation, 8 CFR § 287.1(a)(2), which authorize immigration officials to conduct warrantless searches of vehicles for illegal aliens within one hundred miles of an international border. The court next reasoned that once a vehicle has been validly stopped for an immigration search and the immigration officers, in the course of a search for aliens, detect circumstances—the smell of marijuana for example—supporting the belief that the customs laws are being violated, the officers may then don their customs hats and complete the search to determine if illegal contraband is being transported.

The second facet of the district court's analysis is a correct application of the principles of law relating to searches by border patrol officers. *See* United States v. Wright, 476 F.2d 1027 (5th Cir., 1973); United States v. Thompson, 475 F.2d 1359 (5th Cir., 1973); United States v. McDaniel, 463 F.2d 129 (5th Cir., 1972); United States v. Maggard, 451 F.2d 502 (5th Cir., 1971).[4] Whether the search here passes constitutional muster depends, therefore, on the propriety of the initial intrusion by the border patrol agents when they stopped Byrd's vehicle to search for aliens. To resolve this issue we must examine it against the standards established in the recent Supreme Court decision of Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973).

The facts there are very similar to those in the case at bar:

"[Almeida-Sanchez] was stopped by the United States Border Patrol on State Highway 78 in California, and his car was thoroughly searched. The road is essentially an east-west highway that runs for part of its course through an undeveloped region. At about the point where the petitioner was stopped the road meanders north as well as east—but nowhere does the road reach the Mexican border, and at all points it lies north of Interstate 80, a major east-west highway entirely within the United States that connects the Southwest with the west coast. The petitioner was some 25 air miles north of the border when he was stopped. It is undenied that the Border Patrol had no search warrant, and that there was no probable cause of any kind for the stop or the subsequent search—not even the 'reasonable suspicion' found sufficient for a street detention and weapons search in Terry v. Ohio, 392 U.S. 1 [88 S.Ct. 1868, 20

4. The two-hat theory was explained by Judge Goldberg in McDaniel, 463 F.2d at 134, as follows:

"It appears that Border Patrol agents wear two hats, one as an immigration officer and the other as a customs officer. The agents testified that they had planned to wear their immigration hats that night, but we find nothing in the statutes that would preclude them from later donning their customs hats during a proper border search."

And, Judge Roney recently outlined the legal basis for the principle that a border patrol officer may be validly authorized to act simultaneously as a customs agent in *Thompson*, 475 F.2d at 1362:

"By a series of proper delegations, border patrol officers have been designated by the Treasury Secretary as customs agents. '[A]ny officer of the Bureau of Customs of the Treasury Department . . . or any commissioned, warrant, or petty officer of the Coast Guard, or any agent or other person authorized by law or designated by the Secretary of the Treasury to perform any duties of an officer of Customs Service . . . .' serves as a customs agent. 19 U.S.C.A. § 1401(i). Under Treasury Dept. Order No. 165, Revised, 19 Fed.Reg. 7241 (T.D. 53654, 1954), empowering the Commissioner of Customs to act on behalf of the Treasury Secretary, the Commissioner delegated to special agents of the Bureau of Customs the authority to designate border patrol officers as 'acting Customs Patrol officers,' without compensation. Customs Delegation Order No. 42, 36 Fed.Reg. 13410 (T.D. 71–181, 1971). By letter/order of the Assistant Commissioner of the Bureau of Customs, dated July 14, 1971, all special agents were required to designate all current border patrol officers and future appointees as acting customs patrol officers."

L.Ed.2d 889], and Adams v. Williams, 407 U.S. 143 [92 S.Ct. 1921, 32 L.Ed. 2d 612]."

*Id.* at 267, 93 S.Ct. at 2536. The government defended the search on the basis of "§ 287(a) of the Immigration and Nationality Act, 8 U.S.C. § 1357(a), which simply provides for warrantless searches of automobiles and other conveyances 'within a reasonable distance from external boundary of the United States,' as authorized by regulations to be promulgated by the Attorney General. The Attorney General's regulation, 8 CFR § 287.1, defines 'reasonable distance' as 'within 100 air miles from any external boundary of the United States.'" Id. at 268, 93 S.Ct. at 2537.[5]

■ The Court first noted that the search could not be justified on the basis of the automobile search exception to the Fourth Amendment's warrant requirement because there was not probable cause to believe that Almeida-Sanchez was violating any law. Although warrantless searches of automobiles may sometimes be necessary as a result of exigent circumstances, *e. g.* Carlton v. Estelle, 480 F.2d 759 (5th Cir. 1973), such searches must nevertheless be founded on probable cause. Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll

v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925). *See* Carlton v. Estelle, *supra*; United States v. Soriano, 482 F.2d 469 (5th Cir. 1973) [No. 72–1520, July 2, 1973]. "Automobile or no automobile, there must be probable cause for the search." Almeida-Sanchez v. United States, 413 U.S. at 269, 93 S.Ct. at 2537. It is readily apparent, and the government does not argue to the contrary, that the search in question here does not fit within the narrow automobile search exception to the warrant requirement.

After holding that the search was not supported by cases dealing with administrative inspections,[6] the Court was faced with the issue whether "the statute that purports to authorize automobiles to be stopped and searched, without a warrant and 'within a reasonable distance from any external boundary of the United States,'" *id.* at 272, 93 S.Ct. at 2539, was a constitutionally sufficient basis upon which to predicate the border patrol's stop and ensuing search of Almeida-Sanchez's vehicle.

■ The Court began by distinguishing between a border search, meaning a search at the border or its functional equivalent,[7] and a search which occurs

---

5. The Ninth Circuit upheld the search relying on the statute and the regulation. 452 F.2d 459, 461 (9th Cir., 1971).

6. The Court distinguished Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S. Ct. 774, 25 L.Ed.2d 60 (1970), and United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972). As Mr. Justice Powell said in his concurring opinion, "one who merely travels in regions near the borders of the country can hardly be thought to have submitted to inspections in exchange for a special perquisite." 413 U.S. at 281, 93 S.Ct. at 2543.

7. "For example, searches at an established station near the border, at a point mark-

ing the confluence of two or more roads that extend from the border, might be functional equivalents of border searches. For another example, a search of the passengers and cargo of an airplane arriving at a St. Louis airport after a nonstop flight from Mexico City would clearly be the functional equivalent of a border search."

Almeida-Sanchez v. United States, *supra*, at 273, 93 S.Ct. at 2539. Under our prior decisions we have not been called upon to determine whether a particular search occurred at a functional equivalent of the border in order to determine the constitutionality of the search. And we are not faced with that problem on the record here. However, we note that one of our prior, and often cited cases, United States v.

near a border.[8] This distinction is significant because the analysis it mandates will ultimately determine the standard for measuring the constitutionality of a particular search. The Court reasoned that searches at the border or its functional equivalent were not governed by normal Fourth Amendment principles. The federal government's undoubted power to exclude aliens "can be effectuated by routine inspections and searches of individuals or conveyances seeking to cross our borders." *Id.* at 272, 93 S.Ct. at 2539. "When a person or vehicle is detained at the border *just after entering the country,* the agent's statutory authority to search is virtually unfettered except perhaps as to due process concerning the manner, not the cause, of the search. E. g., Lane v. United States, 5 Cir., 1963, 321 F.2d 573; Blackford v. United States, 9 Cir., 1957, 247 F.2d 745; King v. United States, 5 Cir., 1958, 258 F.2d 754." United States v. Storm, 480 F.2d 701, at 704 (5th Cir. 1973) (Emphasis added). Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925), provides the rationale for searches of this nature:

"It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travellers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in."

As a result of this reasoning it will be necessary for the courts to make an initial determination of whether a search is a border search as that term was narrowly defined by *Almeida-Sanchez.* This will be a somewhat different methodology than that required in the usual case where the rule is that warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few well-delineated exceptions," with "the burden . . . on those seeking the exemption to show the need for it." Coolidge v. New Hampshire, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971). *See* United States v. Soriano, *supra,* 482 F.2d at 472, n. 3. The special nature of a search at the border or its equivalent, however, renders the usual approach inappropriate; if a court decides that a search is a border search, it will not be required to determine whether the search is justified on the basis of a legally sufficient warrant or, if not, whether it is nonetheless proper under one of the exceptions to the warrant requirement. Moreover, the conclusion that a search is a border search will also answer the question concerning the constitutional principles applicable in determining the constitutionality of the search. It is therefore essential that lower courts, as did the Supreme Court in *Almeida-Sanchez,* first address the question whether a particular search is a border search.

■ In *Almeida-Sanchez* the Court concluded that a search by a roving patrol on a road "that lies at all points at least twenty miles north of the Mexican border" was not a border search and thus not governed by the lesser constitutional standard attending searches at

McDaniel, 463 F.2d 129 (5th Cir., 1972), involves a factual setting which illustrates perhaps another example of a functional equivalent to the border. The search in that case occurred at a permanent checkpoint located on Interstate Highway 35, which runs northeast from Laredo to San Antonio; the checkpoint was established at a point seven miles from Laredo. Because the Rio Grande River parallels Interstate

Highway 35 for five of those seven miles and furnishes a readily available avenue for the entry of illegal aliens, it could be plausibly argued that searches at that checkpoint occur at the functional equivalent of the border.

8. The Court carefully avoided the common practice of labeling all searches occurring at or near a border, or involving a possible vi-

the border or its equivalent. The Court was thus left with an unconsented to search not authorized by a warrant and not fitting within any exception to the warrant requirement, a search justifiable, if at all, on the basis of the statute and regulation. Reasoning that "no Act of Congress can authorize a violation of the Constitution," the Court returned to basic Fourth Amendment doctrine and held: "In the absence of probable cause or consent, that search violated the petitioner's Fourth Amendment right to be free of 'unreasonable searches and seizures.'" 413 U.S. at 273, 93 S.Ct. at 2539. The effect of this holding is that lower courts must now for the first time apply familiar Fourth Amendment principles to determine the constitutionality of searches at points near a border but not at the border or its functional equivalent.

■ Applying these principles to the instant appeal, we hold that the search of Byrd's vehicle by a roving border patrol on a road forty-five miles from the Mexican border was unconstitutional. The only arguable distinction between our case and *Almeida-Sanchez* is that the road on which Byrd was stopped runs directly from the border to Freer, Texas. While a situation could be hypothesized in which this distinction might become significant, it does not make a constitutional difference under the facts of this case. The officers did not have a warrant authorizing the search. Nor was there probable cause to believe that Byrd was importing illegal aliens into this country. Indeed, the officers did not have any reason to believe that Byrd had even crossed the border or been in contact with anyone who had. Thus, while the search here is of doubtful constitutional validity under this Circuit's previous decisions, *e. g.*, United States v. Storm, *supra;* Marsh v. United States, 344 F.2d 317 (5th Cir., 1965), it is assuredly unconstitutional under the probable cause standard established by *Almeida-Sanchez*. The district court erred in denying Byrd's motion to suppress the marijuana and the revolver seized in the search of his vehicle.

■ The holding of *Almeida-Sanchez* is narrow, but the reliance in the plurality opinion and in Mr. Justice Powell's concurring opinion on traditional Fourth Amendment analysis makes it clear that lower courts must assess the constitutionality of searches in border areas under standards heretofore thought inapplicable to searches of this nature. Except in those searches conducted at the border or its functional equivalent, the touchstone is probable cause.

On the basis of the preceding discussion Byrd's conviction is Reversed.

olation of the immigration or customs laws, as "border searches." *Compare* Almeida-Sanchez v. United States, *supra, with* United States v. Martinez, 481 F.2d 214 (5th Cir., 1973). The Court also implicitly rejected the often articulated idea that our international borders are "elastic" and thus provide a basis for diminished constitutional protection to those who travel near them.