# Designation of Acting Solicitor of Labor

Eugene Scalia, now serving as the Solicitor for the Department of Labor under a recess appointment, could be given a second position in the non-career Senior Executive Service in the Department of Labor before or after his recess appointment expires and, while serving in his non-career Senior Executive Service position, could be designated as the Acting Solicitor after his recess appointment expires.

November 15, 2002

MEMORANDUM OPINION FOR THE DEPUTY COUNSEL TO THE PRESIDENT

You have asked whether Eugene Scalia, now serving as the Solicitor for the Department of Labor under a recess appointment, could be designated the Acting Solicitor after his recess appointment expires. You have asked us to address two scenarios. Under the first scenario, Mr Scalia would be given a second position in the non-career Senior Executive Service in the Department of Labor before his recess appointment expires. Under the second scenario, he would be given the non-career Senior Executive Service position in the Department of Labor after his recess appointment expires. We conclude, for the reasons stated below, that under either scenario Mr. Scalia could be designated, while serving in his non-career Senior Executive Service position, as the Acting Solicitor after his recess appointment expires.

On April 30, 2001, the President nominated Eugene Scalia to be Solicitor for the Department of Labor. 147 Cong. Rec. 6508 (2001). After the Senate returned all pending nominations when it took a long intrasession recess, the President nominated Mr. Scalia again on September 4, 2001. 147 Cong. Rec. 16,339 (2001). Once again, the Senate failed to act on the nomination. The President gave Mr. Scalia a recess appointment during the Senate's recess from December 20, 2001, to January 23, 2002, and submitted his nomination to the Senate on February 5, 2002. 148 Cong. Rec. 600 (2002). The Senate has not acted upon this last nomination, and Mr. Scalia's recess appointment will expire when the Senate next adjourns sine die. U.S. Const. art. II, § 2, cl. 3.

## I.

Under either scenario, Mr. Scalia would lawfully hold a position in the non-career Senior Executive Service. To begin with the second scenario: There is no question that Mr. Scalia may be given a position in the non-career Senior Executive Service in the Department of Labor after his recess appointment as Solicitor for the Department of Labor expires.[1]

---

[1] It is possible that an interruption in Mr. Scalia's government service—i.e., the time between the expiration of his recess appointment and the commencement of his work in the non-career Senior

As for the first scenario: We also believe that Mr. Scalia, while holding the office of Solicitor for the Department of Labor by recess appointment, could simultaneously hold a position in the non-career Senior Executive Service in the Department of Labor. We have repeatedly concluded that "there is no longer any prohibition against dual office-holding." Memorandum for Honorable John D. Ehrlichman, Counsel to the President, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, at 2 (Feb. 13, 1969) ("Rehnquist Memorandum"); *see also* Memorandum for James H. Thessin, Deputy Legal Adviser, Department of State, from Randolph D. Moss, Deputy Assistant Attorney General, *Re: Dual Office-Holding* at 2 (Dec. 3, 1997) ("*Dual Office-Holding*"); Memorandum for Philip B. Heymann, Deputy Attorney General, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Creation of an Office of Investigative Agency Policies* (Oct. 26, 1993) ("*Office of Investigative Agency Policies*"); *Dual Office of Chief Judge of Court of Veterans Appeals and Director of the Office of Government Ethics*, 13 Op. O.L.C. 241, 242 (1989) ("*Dual Office*"); Memorandum for Arnold Intrater, General Counsel, Office of White House Administration, from John O. McGinnis, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Dual Office of Executive Secretary of National Security Council and Special Assistant* (Mar. 1, 1988); Memorandum for the Honorable George P. Williams, Associate Counsel to the President, from Leon Ulman, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Dual Appointment* (June 24, 1974); Memorandum for the Honorable Myer Feldman, Special Counsel to the President, from Norbert A. Schlei, Assistant Attorney General, Office of Legal Counsel, *Re: Fixing of Salary of Director of Office of Economic Opportunity* (Aug. 19, 1964). In 1964, Congress repealed a statute generally barring the holding of more than one office, *see* Rehnquist Memorandum at 1, and the current statute forbidding the receipt of pay for holding more than one position, 5 U.S.C. § 5533 (2000), "impliedly permits" dual office-holding. *Dual Office*, 13 Op. O.L.C. at 242. Furthermore, as we have pointed out, it is of no consequence if one of the offices to be held is Senate-confirmed and the other is not. *See* Rehnquist Memorandum at 2.

A possible limit on the holding of two offices, however, may arise from the doctrine of "incompatibility." This doctrine, which existed in common law, "precludes a person from holding two offices if public policy would make it improper for the person to perform both functions, such as when the functions of the offices are inconsistent with each other." *Office of Investigative Agency Policies* at 6 (citations omitted). "The doctrine has been stated in various ways, sometimes tautologically, but usually states that offices that are incompatible 'are such as bear a special relation to each other; one being subordinate to and interfer-

---

Executive Service position—might have certain adverse consequences for him. But this issue, which you have not asked us to address, has no bearing on your question.

ing with the other so as, in the language of Coke, to induce the presumption that they cannot be executed with impartiality and honesty.'" *Id*. (quoting 3 McQuillin, *The Law on Municipal Corporations* § 12.67 (1982)). As we have noted, "[i]t is arguable that [the doctrine] has either fallen into desuetude or been repealed by statute." Memorandum for Edward C. Schmults, Deputy Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Appointment as Associate Attorney General* at 3, 4 (June 14, 1983). *But see United States v. Thompson*, 475 F.2d 1359, 1363 (5th Cir. 1973) (discussing whether positions have any "inherent" conflict). Even assuming the continued validity of the doctrine, however, a recess appointee could be appointed to another office as long as "[n]either office, as a matter of statute, reports to the other or reviews determinations that the other has made." *See Dual Office-Holding* at 4.

Under the Dual Compensation Act, 5 U.S.C. § 5533, the recess appointee could receive the pay for only one of the offices. As we have interpreted the Act, the holder of two offices "must be paid the higher salary if it is fixed by law," because he "would otherwise be waiving a right to compensation established pursuant to statute—which is unlawful." *Dual Office*, 13 Op. O.L.C. at 243 n.3 (citations omitted).[2]

## II.

Under either of your two scenarios, we believe that, after expiration of his recess appointment, Mr. Scalia may be designated under the Vacancies Reform Act, 5 U.S.C. §§ 3345-3349d (2000), to act in the position he will have vacated when his recess appointment expired. Under the Vacancies Reform Act, the President "may direct an officer or employee of [an] Executive agency to perform the functions and duties of [a] vacant [Senate-confirmed] office temporarily in an acting capacity," subject to specified time limits, provided that, during the year preceding the occurrence of the vacancy, the officer or employee served for at least 90 days in a position in that agency for which the rate of pay equaled or exceeded the rate for GS-15 of the General Schedule. 5 U.S.C. § 3345(a)(3). By virtue of his non-career Senior Executive Service position with the Department of Labor, Mr. Scalia would be "an officer or employee" of that agency, and, during the year before the expiration of his recess appointment created a vacancy, he would have served for at least 90 days in a position—the office of Solicitor, to which he was recess appointed—for which the pay exceeded the GS-15 rate. By

---

[2] A Senior Executive Salary might, or might not, exceed the Executive Level IV pay of the Solicitor of Labor. Salaries in the Senior Executive Service cover a range. 5 U.S.C. § 5382(a). The lowest level of Senior Executive Service pay, even with a "locality-based comparability" adjustment for Washington, D.C., *see* 5 U.S.C. § 5304 (2000), would be less than the pay for Executive Level IV, while the higher levels would exceed the pay for Executive Level IV.

the plain terms of the Vacancies Reform Act, he would be eligible to be designated to act.[3]

There are two contrary arguments, the first based on the Vacancies Reform Act and the second on the Recess Appointments Clause. In our view, neither argument is persuasive.

The first argument is that, under the Vacancies Reform Act, the relevant vacancy would have occurred when the recess appointee's predecessor left office and that the recess appointee, unless he qualified by virtue of service in the agency before then, would not be able to act in the position. The basis for this argument would be the provision of the Vacancies Reform Act stating that the Act is the exclusive means for designation of an acting official, with two exceptions—(1) a statute expressly authorizing the President, a court, or a head of a department to name an acting official or a statute expressly designating an official to act, or (2) the Recess Appointments Clause of the Constitution. 5 U.S.C. § 3347(a). According to this argument, the Vacancies Reform Act thus treats a recess appointment as identical to an acting designation, and an acting designation does not fill an office but only assigns its duties and powers. The provisions of the Vacancies Reform Act that allow designations of acting officials but set time limits on their service, for example, contemplate that a "vacancy" occurs when the occupant dies or resigns or is otherwise unavailable (except as a result of sickness), 5 U.S.C. §§ 3345-3346, and the departure of an acting official does not create a new vacancy. So, too, as this argument would go, the expiration of a recess appointment does not create a new vacancy.

The language of the Vacancies Reform Act refutes this argument. While the statute provides that an acting official only will "perform the functions and duties of the [vacant] office temporarily," *id*. § 3345(a)(1), (2), (3), it states that a recess appointment "fill[s] a vacancy," *id*. § 3347(a)(2). Therefore, when the recess appointment ends, a new vacancy is created. We accordingly would read the statutory reference to recess appointments as simply making clear that Congress did not intend, by the Vacancies Reform Act, to restrict the President's recess appointment power in any way.

The second argument is that, because an acting official has the same duties and powers as a recess appointee, a designation to act would extend the recess appointment past the constitutionally mandated limit of "the End of [the Senate's] next Session." U.S. Const. art. II, § 2, cl. 3. This argument, in our view, would ignore the differences between holding an office and acting in it. An acting official does not hold the office, but only "perform[s] the functions and duties of the

---

[3] A provision of the Vacancies Reform Act that, in some circumstances, forbids an official to act in a position for which he has been nominated, 5 U.S.C. § 3345(b)(1), does not apply if an official is acting pursuant to the President's designation. *See Guidance on Application of the Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 64 (1999) (Question 15).

office." 5 U.S.C. § 3345(a)(1), (2), (3). He is not "appointed" to the office, but only "direct[ed]" or authorized to discharge its functions and duties, and he thus receives the pay of his permanent position, not of the office in which he acts. *See* 5 U.S.C. § 5535(a) (2000). A recess appointee, on the other hand, is appointed by one of the methods specified in the Constitution itself, *see Swan v. Clinton*, 100 F.3d 973, 987 (D.C. Cir. 1996) (recess appointment is not an "inferior" procedure to appointment with Senate confirmation); he holds the office; and he receives its pay. We therefore conclude that a designation to act would not unconstitutionally extend the tenure of a recess appointee.

Mr. Scalia's service as Acting Solicitor would be subject to the time limits in 5 U.S.C. § 3346. Ordinarily, an acting official's service, absent any further action, may continue for 210 days from the occurrence of the vacancy. 5 U.S.C. § 3346(a)(1). However, "[i]f a vacancy occurs during an adjournment of the Congress sine die, the 210-day period . . . shall begin on the day that the Senate first reconvenes." *Id*. § 3346(c). If the Senate does not adjourn sine die before the House, we believe that the vacancy here would occur "during an adjournment sine die of the Congress." The office would be filled at all times that Congress was in session, because the recess appointment would expire "at the End of [the Senate's] . . . Session." U.S. Const. art. II, § 2, cl. 3.

Notwithstanding the usual 210-day limit, if the President submitted a nomination for the vacant office (including a nomination of Mr. Scalia), Mr. Scalia's service could continue as long as the nomination was pending in the Senate. *Id*. § 3346(a)(2). If the Senate rejected or returned the nomination or the President withdrew it, a new 210-day period would begin. *Id*. § 3346(b)(1). Once again, however, if the President submitted a nomination, the service could continue while the nomination was pending. *Id*. § 3346(b)(2). Rejection, return, or withdrawal of the nomination would start a final 210-day period, which would not be suspended by the President's making another nomination. *Id*. § 3346(b)(2)(B). If any of the 210-day periods ends when the Senate is not in session, the second day on which the Senate is next in session and is receiving nominations is deemed the last day of the period. *Id*. § 3348(c).

M. EDWARD WHELAN III
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*
