493 F.2d 910
 UNITED STATES of America, Plaintiff-Appellee,
v.
Estanislao MERLA, Defendant-Appellant.
No. 73-3660. Summary Calendar.*
*Rule 18, 5 Cir.; see Isbell Enterprises Inc.
v.
Citizens Casualty Company of New York et al., 5 Cir. 1970,
431 F.2d 409, Part I.
 United States Court of Appeals, Fifth Circuit.
 May 6, 1974.
 
 Abel Toscano, Jr., Harlingen, Tex. (Court-appointed), for defendant-appellant.
 Anthony J. P. Farris, U.S. Atty., Houston, Tex., Edward B. McDonough, Jr., B. Stephen Rice, James R. Gough, Mary L. Sinderson, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.
 Before BELL, SIMPSON and MORGAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal is from a conviction for knowingly and intentionally possessing with intent to distribute approximately 162 pounds of marihuana, a Schedule 1 controlled substance, in violation of Title 21, U.S.C., Section 841(a)(1). Prior to trial the defendant moved to suppress and return the evidence, and the court directed that the motion to suppress be carried at trial with the government's case for ruling when the government rested its case. Trial by jury was waived and the case both as to the merits and as to the motion to suppress was tried before the court under a stipulation of facts, the trial taking place on July 23, 1973. On July 30, 1973, the trial court denied the motion to suppress and found the defendant guilty of the offense charged. The defendant was adjudged guilty and sentence was thereafter imposed providing for imprisonment for four years with a special parole term of three years. This appeal followed.
 
 
 2
 Under the stipulation the following facts were established without conflict: The defendant-appellant Merla, accompanied by his four-year-old daughter and driving a 1963 Ford Galaxie, was stopped by border patrol agents performing their official duties on October 15, 1972, about 6:30 P.M. at the border patrol checkpoint five miles south of Sarita, Texas. One of the agents, Senior Border Patrol Agent Phillips, after determining the citizenship of both occupants of the Ford Galaxie, requested that the vehicle trunk be opened for a routine inspection for aliens. Merla opened the trunk revealing a large blanket covering a bulky substance. Agent Phillips detected a strong order of an air freshener. Further examination was made to determine whether aliens were concealed by the blanket and three large burlap bags of the type used to transport marihuana were revealed. Upon further examination the bags were found to contain 162 pounds, 12 ounces of marihuana packed in the form of kilobricks. Merla was then arrested by Agent Phillips. About 7:30 two agents of the United States Customs Service arrived at the checkpoint and took custody of the appellant, the contraband and the vehicle. After being advised of his rights under Miranda[1] by one or the Customs agents, Merla stated that he was en route to Chicago where he was to deliver the marihuana and receive $500. He agreed to cooperate with the agents and deliver the contraband in an area south of Chicago but because he was unable to give more than a vague description of the proposed delivery or of the proposed recipients of the marihuana, the transport did not take place. It was further stipulated that testimony by Mr. Ball, of the Border Patrol Office in McAllen, Texas, would show that the Sarita checkpoint was maintained because of its strategic location on a direct route leading from the border. Other routes were available including one through the King Ranch but were not as readily accessible. The checkpoint is shifted to three different spots along the road to prevent smugglers of aliens from knowing where the checkpoint is situated at a particular time. Figures were also introduced as to the number of arrests of aliens, alien smugglers, narcotic and marihuana arrests and the value of the vehicles seized at the Sarita checkpoint during the preceding years.
 
 
 3
 The sole question raised on appeal is whether or not the trial court erroneously denied the defendant's motion to suppress evidence. Appellant's brief asserts that the Sarita checkpoint was 85 miles from the Mexican border. The distance is not controverted by the government's brief, and we accept it as correct. Annexed to the government's brief is a map of the area which shows the checkpoint on U.S. Highway 77, about 45 miles due north of Raymondville and about 5 miles south of Sarita. It is the most direct route north from the border crossing at Brownsville-Matamoros.[2]
 
 
 4
 The search and seizure involved took place eight or nine months prior to the decision of the United States Supreme Court on June 21, 1973, in Almeida-Sanchez v. United States, 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596, although the trial occurred about a month after that decision. Denial of the motion to suppress was clearly correct under our decisions prior to Almeida-Sanchez, which announced a new rule invalidating searches without probable cause anywhere except at the border or its 'functional equivalent'. If Almeida-Sanchez were to be applied retroactively, we would be called upon to resolve the difficult questions raised by the briefs in this case as to whether the Sarita checkpoint is the functional equivalent of the border and whether or not probable cause was present.
 
 
 5
 However, by its definitive opinion in United States of America v. Miller, 5 Cir. 1974, 492 F.2d 37 this Court has determined that Almeida-Sanchez shall be given only prospective application. Since the search and seizure in the instant case took place prior to the date of that decision, the motion to suppress was correctly denied and the marihuana was properly received in evidence.
 
 
 6
 The judgment appealed from is affirmed under the authority of Miller, supra.[3]
 
 
 
 [1]
 Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
 
 
 [2]
 See Title 8, Code of Federal Regulations 287.1 defining 'a reasonable distance from any external boundary of the United States' as used in Title 8, U.S.C., Section 1357(a)(3) as not exceeding 100 air miles
 
 
 [3]
 See also United States v. Cook, 5 Cir. 1974, 492 F.2d 747 (No. 73-2906 decided April 12, 1974)