493 F.2d 935
 UNITED STATES of America, Plaintiff-Appellee,
v.
Oscar E. CHAVARRIA, Defendant-Appellant.
No. 73-3882 Summary Calendar.*
*Rule 18, 5 Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Company of New York et al., 5 Cir., 1970,
431 F.2d 409, Part. I.
 United States Court of Appeals, Fifth Circuit.
 May 6, 1974.
 
 Abel Toscano, Jr., Harlingen, Tex., for defendant-appellant.
 Anthony J. P. Farris, U.S. Atty., Houston, Tex., Edward B. McDonough, Jr., John P. Smith, James R. Gough, Asst. U.S. Attys., Anna E. Stool, Staff Atty., U.S. Dept. of Justice, for plaintiff-appellee.
 Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit judges.
 PER CURIAM:
 
 
 1
 Appellant was convicted of conspiring to import heroin in violation of 21 U.S.C.A. 952(a) and 963 and importing approximately 6 ounces of heroin in violation of 952(a) and (a)(2). He received concurrent three-year sentences with a special parole term of three years on each count. A third count of possessing heroin with intent to distribute was dismissed by the Court. Finding no merit in Appellant's contention that the District Court erred in failing to suppress the evidence of identification by a co-conspirator as the fruit of an illegal detention, we affirm.
 
 
 2
 On the morning of June 26, 1973 a Customs Agent in Brownsville received information from a confidential informant that three Latin males, one of whom was named Oscar, were in the process of purchasing heroin at a specified location in Matamoros, Mexico and that they intended to smuggle it into the United States in a short time. The informant further stated that the individuals would be driving a white Chrysler and a white Ford and provided the respective license numbers of there vehicles.
 
 
 3
 The Customs Agent and an associate immediately proceeded to the specified location in Matamoros where they observed three Latin males sitting in the Chrysler described by the informant. One resembled a known narcotics smuggler, and the other two were subsequently identified as David Dominguez and Appellant. An individual identified as Juan Cisneros was observed sitting in the white Ford which was parked nearby. The agents immediately radioed Customs authorities on both international bridges and requested that they stop and search the Chrysler and Ford if they should attempt to enter the United States.
 
 
 4
 At approximately 8:55 a.m. as the agents were proceeding back to Brownsville via the Brownsville-Matamoros Bridge, they noticed that the white Chrysler, driven by David Dominguez, had pulled in immediately behind them. Dominguez was searched and was found to be carrying 6 ounces of heroin in prophlactics concealed in his sock.
 
 
 5
 After having been given his Miranda warnings, Dominguez agreed to cooperate-- specifically he agreed to attempt to identify the individuals who had asked him to smuggle the heroin into the United States.
 
 
 6
 In the meantime, at approximately 9:15 a.m. Appellant and Juan Cisneros arrived at the Gateway Bridge in the white Ford. Pursuant to the radio request, the Ford and its passengers were searched but no contraband was discovered. Nevertheless the agents at the Gateway Bridge determined to detain Appellant and Cisneros pending the possible arrival of the white Chrysler.
 
 
 7
 At about that time they received a call from agents at the Brownsville-Matamoros Bridge informing them that the white Chrysler had been stopped, that heroin had been found on the driver and that he had agreed to attempt to identify his cohorts.
 
 
 8
 Appellant and Cisneros were then placed in a room with two other Latin males (employees of the Customs Agency). Dominguez was immediately brought over to the Gateway Bridge where he identified Appellant and Cisneros.[1]
 
 
 9
 Appellant's sole contention is that the Customs officials at the Gateway Bridge had no right to detain him once the initial search of his vehicle and person failed to produce any contraband and therefore the evidence of the identification by Dominguez should have been suppressed as the fruit of the allegedly illegal detention.
 
 
 10
 We disagree. 19 U.S.C.A. 1582 provides that:
 
 
 11
 '. . . All persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the government * * *.'
 
 
 12
 The Courts have long recognized the government's right to search and detain travelers at our international boundaries on the basis of reasonable suspicion. See Carroll v. United States, 1925, 267 U.S. 132, 154, 45 S.Ct. 280, 285, 69 L.Ed. 543, 551-552; United States v. McDaniel, 5 Cir., 1972, 463 F.2d 129, cert. denied, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041. When Appellant was originally detained at the Gateway Bridge, the Customs officials had the requisite reasonable suspicion if not probable cause to believe that he was presently engaged in concerted activity in violation of the Customs laws. See United States v. Acosta, 5 Cir., 1969, 411 F.2d 627; Stassi v. United States, 5 Cir., 1969, 410 F.2d 946. The immediately ensuing phone call from the agents at the Brownsville-Matamoros Bridge made the evidence warranting Appellant's continued detention all the more compelling. The challenged identification took place as quickly as Dominguez could be transported from one bridge to the other.
 
 
 13
 Under the circumstances the detention at the Gateway Bridge did not violate Appellant's Fourth Amendment rights. Accordingly there was nothing to be suppressed.
 
 
 14
 Affirmed.
 
 
 
 [1]
 Dominguez pleaded guilty to one count of illegally importing 6 ounces of heroin and testified at Appellant's trial. Cisneros, while charged under the same indictment as Appellant and Dominguez, was acquitted by the Court when the government rested its case