**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lawrence Edward HART,
Defendant-Appellant.**

**No. 73–3949.**

United States Court of Appeals,
Fifth Circuit.

Jan. 15, 1975.

---

Johnny Searls (Court-appointed), Larry Victorson, El Paso, Tex., for defendant-appellant.

William S. Sessions, U. S. Atty., San Antonio, Tex., Ronald Ederer, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before TUTTLE, RONEY and GEE, Circuit Judges.

RONEY, Circuit Judge:

This case involves the effect of the Supreme Court's decision in Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) on a search and seizure at a permanent United States Border Patrol checkpoint near Sierra Blanca, Texas. Holding that the principle announced in *Almeida-Sanchez* does not militate against the legality of this search under our prior decisions, we affirm these convictions for possession of 397 pounds of marijuana with intent to distribute, 21 U.S.C.A. § 841(a)(1), and for escape from custody pursuant to lawful arrest, 18 U.S.C.A. § 751(a).

On October 9, 1973, at approximately 6:30 a. m., Lawrence Edward Hart was stopped at a permanent United States Border Patrol checkpoint on Interstate Highway 10, 85 miles east of El Paso, Texas, and 4 miles west of Sierra Blanca, Texas. Border Patrol agent Charles Elmore inquired as to Hart's citizenship and requested that Hart open the trunk of his automobile. When Hart complied, Border Patrol agent Tom Moore detected an odor of marijuana and observed a white sheet covering the contents of the trunk. Agent Elmore pulled back a corner of the sheet and observed "kilo-shaped" bricks of marijuana. A count of the bricks disclosed 185 kilo packages, or approximately 397 pounds of marijuana.

The agents advised Hart that he was under arrest, placed him in handcuffs,

and confined him in the rear of the trailer-office at the checkpoint. Hart, however, managed to escape. The following day, Border Patrol agents apprehended Hart in Lordsburg, New Mexico, where they found Hart hiding in a freight car, still handcuffed. Hart attempted to escape from the agents a second time, however, they successfully returned him to El Paso.

On November 7, 1973, Hart was indicted on one count of possession of a Schedule I Controlled Substance with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1), and one count of escape from the custody of an officer of the United States pursuant to a lawful arrest in violation of 18 U.S.C.A. § 751(a). On November 9, Hart filed a motion to suppress evidence which alleged that the Border Patrol agents at Sierra Blanca checkpoint had conducted the search of Hart's car in violation of the Fourth Amendment. On November 28, a jury having been waived, the United States District Court for the Western District of Texas proceeded to hear the merits of Hart's case. At the conclusion of the evidence, the court overruled Hart's motion to suppress and found Hart guilty on both counts. On December 4, the court sentenced Hart to five years imprisonment on each count, such sentences to run concurrently, and five years special parole on count one.

On appeal, Hart asserts two grounds for the reversal of his conviction. *First,* Hart argues that his conviction for possession of marijuana with intent to distribute should be reversed because the evidence against him was obtained as a result of an unconstitutional search and seizure. *Second,* Hart contends that his conviction for escape should be set aside because there was no lawful arrest, the stop and search which led to the arrest being illegal. At oral argument before this Court, Hart's attorney properly conceded that the question of the constitutionality of the search at the Sierra Blanca checkpoint controls the disposition of both convictions.

On every occasion that the question has previously been presented to us, we have upheld, as constitutional, searches conducted pursuant to 8 U.S.C.A. § 1357(a) at permanent checkpoints. *See* United States v. Phillips, 496 F.2d 1395 (5th Cir. 1974); United States v. McGlynn, 496 F.2d 1316 (5th Cir. 1974), cert. applied for December 4, 1974; United States v. Hufstetler, 496 F.2d 1184 (5th Cir. 1974); United States v. Merla, 493 F.2d 910 (5th Cir. 1974); United States v. McDaniel, 463 F.2d 129 (5th Cir. 1972); United States v. DeLeon, 462 F.2d 170 (5th Cir. 1972), cert. denied, 414 U.S. 853, 94 S.Ct. 148, 38 L.Ed.2d 102 (1973). In two recent decisions covering pre-Almeida-Sanchez searches, we have specifically held that border agents may stop vehicles at the Sierra Blanca checkpoint and search the trunks of those vehicles for aliens illegally in the United States. United States v. McGlynn, 496 F.2d 1316 (5th Cir. 1974); United States v. Hufstetler, 496 F.2d 1184 (5th Cir. 1974).

As an aid in deciding this case, we have compiled in two ways the so-called Texas border search cases decided by this Court in the past ten years and set forth both lists in the margin: first, we have listed the cases according to the location of the search,[1] and second, we

---

1.

A.  *Laredo, Texas*
    United States v. Bowman, 502 F.2d 1215 (5th Cir. 1974). Laredo. Valid.
    United States v. Phillips, 496 F.2d 1395 (5th Cir. 1974), cert. applied for December 4, 1974. Temporary/permanent checkpoint 11 mi. N. of Laredo. Valid.
    United States v. Wright, 476 F.2d 1027 (5th Cir.), cert. denied, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973). Temporary/permanent checkpoint 11 mi. N. of Laredo. Valid.
    United States v. McDaniel, 463 F.2d 129 (5th Cir. 1972), cert. denied, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973). Temporary/permanent checkpoint 7 mi. N. of Laredo. Valid.
    United States v. DeLeon, 462 F.2d 170 (5th Cir. 1972), cert. denied, 414 U.S. 853, 94 S.Ct. 76, 38 L.Ed.2d 102 (1973). Temporary/permanent checkpoint 10 mi. N. of Laredo. Valid.

United States v. Bird, 456 F.2d 1023 (5th Cir. 1972), cert. denied, 413 U.S. 919, 93 S.Ct. 3039, 37 L.Ed.2d 1040 (1973). Temporary/permanent checkpoint 8 mi. N. of Laredo. Valid.

United States v. Maggard, 451 F.2d 502 (5th Cir. 1971), cert. denied, 405 U.S. 1045, 92 S.Ct. 1330, 31 L.Ed.2d 587 (1972). Temporary/permanent checkpoint 8 mi. N. of Laredo. Valid.

United States v. Salinas, 439 F.2d 376 (5th Cir. 1971). 4 blocks from border in Laredo. Valid.

Morales v. United States, 378 F.2d 187 (5th Cir. 1967). Laredo. Valid.

B. *Falfurrias, Texas*

United States v. Cantu, 504 F.2d 387 (5th Cir. 1974). Temporary/permanent checkpoint 2 mi. S. of Falfurrias. Valid.

United States v. Diemler, 498 F.2d 1070 (5th Cir. 1974). Temporary checkpoint 16 mi. S. of Falfurrias. Invalid.

United States v. Wilson, 492 F.2d 1160 (5th Cir. 1974). Temporary checkpoint 16 mi. S. of Falfurrias. *No search & seizure.*

Ramirez v. United States, 263 F.2d 385 (5th Cir. 1959). Temporary (?) checkpoint 4 mi. S. of Falfurrias on U.S. Highway 281. Valid.

C. *Freer, Texas*

United States v. Daly, 493 F.2d 395 (5th Cir. 1974). Roving patrol 50 mi. from Laredo, 12 mi. from Freer. Valid.

United States v. Byrd, 483 F.2d 1196 (5th Cir. 1973), modified 494 F.2d 1284 (5th Cir. 1974). Roving patrol near Freer. Invalid.

Marsh v. United States, 344 F.2d 317 (5th Cir. 1965). Traffic check at intersection in Freer on basis of call from customs agent at Laredo. Invalid.

D. *Hebbronville, Texas*

United States v. Miller, 492 F.2d 37 (5th Cir. 1974). Roving patrol. Valid.

United States v. Storm, 480 F.2d 701 (5th Cir. 1973). Roving patrol. Invalid.

United States v. Thompson, 475 F.2d 1359 (5th Cir. 1973). Roving patrol. Valid.

E. *Brownsville, Texas*

United States v. Steinkoenig, 487 F.2d 225 (5th Cir. 1973). Surveillance. Valid.

United States v. Valdez, 456 F.2d 1140 (5th Cir. 1972). Eyewitness tip. Valid.

F. *El Paso, Texas*

United States v. Warner, 441 F.2d 821 (5th Cir.), cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). Surveillance. Valid.

Thomas v. United States, 372 F.2d 252 (5th Cir. 1967). Surveillance. Valid.

Barrera v. United States, 276 F.2d 654 (5th Cir. 1960). At Juarez International Bridge. Valid.

G. *Sierra Blanca, Texas*

United States v. Hufstetler, 496 F.2d 1184 (5th Cir. 1974). Permanent checkpoint 4 mi. W. of Sierra Blanca. Valid.

United States v. McGlynn, 496 F.2d 1316 (5th Cir. 1974). Permanent checkpoint 4 mi. W. of Sierra Blanca. Valid.

H. *Marfa, Texas*

United States v. Reagor, 441 F.2d 252 (5th Cir. 1971). Surveillance. Valid.

United States v. Acosta, 411 F.2d 627 (5th Cir. 1969). Tip, no checkpoint. Valid.

I. *Harlingen, Texas*

United States v. Solis, 469 F.2d 1113 (5th Cir. 1972), cert. denied, 410 U.S. 932, 93 S.Ct. 1375, 35 L.Ed.2d 594 (1973). Surveillance. Court says not a *border search*, but valid on probable cause.

United States v. Garcia, 452 F.2d 419 (5th Cir. 1971). Surveillance. Valid.

J. *Refugio, Texas*

United States v. Bursey, 491 F.2d 531 (5th Cir. 1974). Surveillance. Invalid.

K. *San Antonio, Texas*

United States v. Martinez, 481 F.2d 214 (5th Cir. 1973), cert. denied, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 489 (1974). Surveillance. Valid.

L. *McAllen, Texas*

Stassi v. United States, 410 F.2d 946 (5th Cir. 1969). Bus depot. Valid.

M. *Carrizo Springs, Texas*

Walker v. United States, 404 F.2d 900 (5th Cir. 1968). Roadblock. Valid.

N. *Eagle Pass, Texas*

Valadez v. United States, 358 F.2d 721 (5th Cir. 1966). 5 blocks from border. Valid.

O. *Faben, Texas*

United States v. Olivares, 496 F.2d 657 (5th Cir. 1974). Surveillance. Invalid.

P. *Sarita, Texas*

United States v. Merla, 493 F.2d 910 (5th Cir. 1974). Permanent/temporary checkpoint 5 mi. S. of Sarita. Valid.

Q. *Kingsville, Texas*

Moreno-Vallejo v. United States, 414 F.2d 901 (5th Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 76 (1970). Checkpoint (unable to determine whether permanent or temporary). Valid.

R. *Three Rivers, Texas*

Smith v. United States, 385 F.2d 34 (5th Cir. 1967). Court says *probable cause* here. Valid.

S. *Commanche, Texas*

Maltos-Roque v. United States, 381 F.2d 130 (5th Cir. 1967). Tip, no checkpoint. Valid.

T. *At or Near the Border*

United States v. Chavarria, 493 F.2d 935 (5th Cir. 1974). At Gateway International Bridge. Valid.

have listed them according to the kind of checkpoint or stop involved.[2]  From this compilation, it can be seen that we have never held unconstitutional a search with

United States v. Johnson, 456 F.2d 295 (5th Cir. 1972).  International Bridge, Laredo.  Valid.

United States v. Johnson, 439 F.2d 885 (5th Cir.), cert. denied, 404 U.S. 880, 92 S.Ct. 213, 30 L.Ed.2d 161 (1971).  5 mi. N. of Gateway International Bridge.  Valid.

United States v. Poindexter, 429 F.2d 510 (5th Cir. 1970).  Surveillance a few miles from border.  Valid.

United States v. Briones, 423 F.2d 742 (5th Cir.), cert. denied, 399 U.S. 933, 90 S.Ct. 2270, 26 L.Ed.2d 804 (1970).  Apparently at the border in Laredo.  Valid.

Willis v. United States, 370 F.2d 604 (5th Cir. 1966).  6 miles from border.  Valid.

King v. United States, 258 F.2d 754 (5th Cir. 1958), cert. denied, 359 U.S. 939, 79 S.Ct. 652, 3 L.Ed.2d 639 (1959).  Apparently at the border.  Valid.

U.  *Other Points in Texas*

United States v. Speed, 497 F.2d 546 (5th Cir. 1974).  Temporary checkpoint; U. S. Highway 281, 65 to 75 mi. N. of border.  Invalid.

United States v. McKim, 487 F.2d 305 (5th Cir. 1973).  Roving patrol; 55 mi. N. of border on Highway 1017.  Invalid.

United States v. Warren, 451 F.2d 582 (5th Cir. 1971).  Somewhere in Texas.  Valid.

United States v. Rodriguez Reinosa, 427 F.2d 150 (5th Cir. 1970).  Somewhere in Texas.  Valid.

Bailey v. United States, 386 F.2d 1 (5th Cir. 1967), cert. denied, 392 U.S. 946, 88 S.Ct. 2300, 20 L.Ed.2d 1408 (1968).  Surveillance; 70 mi. N. of Falcon, Texas.  (Ct. does not speak in terms of border search, but rather probable cause).  Valid.

Brett v. United States, 377 F.2d 520 (5th Cir. 1967), cert. denied, 392 U.S. 945, 88 S.Ct. 2289, 20 L.Ed.2d 1407 (1968).  Court says probable cause here.  Valid.

2.

A.  *Permanent*

United States v. Hufstetler, 496 F.2d 1184 (5th Cir. 1974).  Valid.  Sierra Blanca.

United States v. McGlynn, 496 F.2d 1316 (5th Cir. 1974).  Valid.  Sierra Blanca.

B.  *Permanent/Temporary*

United States v. Phillips, 496 F.2d 1395 (5th Cir. 1974), cert. applied for December 4, 1974.  Valid.  11 mi. N. of Laredo.

United States v. Merla, 493 F.2d 910 (5th Cir. 1974).  Valid.  5 mi. S. of Sarita.

United States v. McDaniel, 463 F.2d 129 (5th Cir. 1972), cert. denied, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973).  Valid.  7 mi. N. of Laredo.

United States v. DeLeon, 462 F.2d 170 (5th Cir. 1972), cert. denied, 414 U.S. 853, 94 S.Ct. 76, 38 L.Ed.2d 102 (1973).  Valid.  10 mi. N. of Laredo.

United States v. Bird, 456 F.2d 1023 (5th Cir. 1972), cert. denied, 413 U.S. 919, 93 S.Ct. 3039, 37 L.Ed.2d 1040 (1973).  Valid.  8 mi. N. of Laredo.

United States v. Maggard, 451 F.2d 502 (5th Cir. 1971), cert. denied, 405 U.S. 1045, 92 S.Ct. 1330, 31 L.Ed.2d 587 (1972).  Valid.  8 mi. N. of Laredo.

Moreno-Vallejo v. United States, 414 F.2d 901 (5th Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 76 (1970).  Valid.  Near Kingsville.

C.  *Temporary*

United States v. Cantu, 504 F.2d 387 (5th Cir. 1974).  Valid.  2 mi. S. of Falfurrias.

United States v. Diemler, 498 F.2d 1070 (5th Cir. 1974).  Invalid.  16 mi. S. of Falfurrias.

United States v. Speed, 497 F.2d 546 (5th Cir. 1973).  Invalid.  U. S. Highway 281, 65 to 75 mi. N. of Mex. border.

United States v. Wilson, 492 F.2d 1160 (5th Cir. 1974).  No search or seizure at all.  16 mi. S. of Falfurrias.

United States v. Wright, 476 F.2d 1027 (5th Cir.), cert. denied, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973).  Valid.  11 mi. N. of Laredo.

Ramirez v. United States, 263 F.2d 385 (5th Cir. 1959).  Valid.  4 mi. S. of Falfurrias.

D.  *Roving*

United States v. Daly, 493 F.2d 395 (5th Cir. 1974).  Valid.  50 mi. from Laredo, 12 mi. from Freer.

United States v. Miller, 492 F.2d 37 (5th Cir. 1974).  Valid.  Hebbronville.

United States v. McKim, 487 F.2d 305 (5th Cir. 1973).  Invalid.  55 mi. N. of border on Texas Highway 1017.

United States v. Byrd, 483 F.2d 1196 (5th Cir. 1973); modified 494 F.2d 1284 (5th Cir. 1974).  Invalid.  Near Freer.

United States v. Storm, 480 F.2d 701 (5th Cir. 1973).  Invalid.  Hebbronville.

United States v. Thompson, 475 F.2d 1359 (5th Cir. 1973).  Valid.  Hebbronville.

E.  *At or Near the Border Itself*

United States v. Chavarria, 493 F.2d 935 (5th Cir. 1974).  Valid.  At border.  Gateway Bridge.

United States v. Johnson, 456 F.2d 295 (5th Cir. 1972).  Valid.  International Bridge, Laredo.

the characteristics of a border search when made at a permanent checkpoint. Nor have we even held invalid a search at what we have called a permanent/temporary checkpoint, that is, a permanent checkpoint area where the physical location of the checkpoint may be changed from time to time, as in Laredo.

The searches which have been held invalid occurred at clearly temporary checkpoints, United States v. Diemler, 498 F.2d 1070 (5th Cir. 1974) and United States v. Speed, 497 F.2d 546 (5th Cir. 1974), *but see* United States v. Cantu, 504 F.2d 387 (5th Cir. 1974) (now pending on petition for rehearing); were by roving patrols, United States v. Byrd, 483 F.2d 1196 (5th Cir. 1973), modified 494 F.2d 1284 (5th Cir. 1974); United States v. McKim, 487 F.2d 305 (5th Cir. 1973); United States v. Storm, 480 F.2d 701 (5th Cir. 1973); or were otherwise nonpermanent checkpoint cases, United States v. Olivares, 496 F.2d 657 (5th Cir. 1974); United States v. Bursey, 491 F.2d 531 (5th Cir. 1974).

The law of this Circuit thus seems to be clear that permanent checkpoint searches of motor vehicles conducted as

United States v. Salinas, 439 F.2d 376 (5th Cir. 1971). Valid. 4 blocks from border. Laredo.
United States v. Johnson, 439 F.2d 885 (5th Cir.), cert. denied, 404 U.S. 880, 92 S.Ct. 213, 30 L.Ed.2d 161 (1971). Valid. 5 mi. N. of Gateway International Bridge.
United States v. Poindexter, 429 F.2d 510 (5th Cir. 1970). Valid. A few mi. from the border.
United States v. Briones, 423 F.2d 742 (5th Cir.), cert. denied, 399 U.S. 933, 90 S.Ct. 2270, 26 L.Ed.2d 804 (1970). Valid. Apparently at the border near Laredo.
Willis v. United States, 370 F.2d 604 (5th Cir. 1966). Valid. 6 mi. from border.
Valadez v. United States, 358 F.2d 721 (5th Cir. 1966). Valid. 5 blocks from Mex. border. Eagle Pass, Texas.
Barrera v. United States, 276 F.2d 654 (5th Cir. 1960). Valid. At border. Juarez International Bridge.
King v. United States, 258 F.2d 754 (5th Cir. 1958), cert. denied, 359 U.S. 939, 79 S.Ct. 652, 3 L.Ed.2d 639 (1959). Valid. Apparently at the border.

F. *Surveillance*
United States v. Olivares, 496 F.2d 657 (5th Cir. 1974). Invalid. Near Fabens.
United States v. Bursey, 491 F.2d 531 (5th Cir. 1974). Invalid. Refugio.
United States v. Steinkoenig, 487 F.2d 225 (5th Cir. 1973). Valid. Brownsville.
United States v. Martinez, 481 F.2d 214 (5th Cir. 1973), cert. denied, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 489 (1974). Valid. San Antonio.
United States v. Garcia, 452 F.2d 419 (5th Cir. 1971). Valid. Harlingen.
United States v. Reagor, 441 F.2d 252 (5th Cir. 1971). Valid. Marfa.
United States v. Warner, 441 F.2d 821 (5th Cir.), cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). Valid. El Paso.

Morales v. United States, 378 F.2d 187 (5th Cir. 1967). Valid. Laredo.
Thomas v. United States, 372 F.2d 252 (5th Cir. 1967). Valid. El Paso.

G. *Border Searches on Basis of Tip*
United States v. Bowman, 502 F.2d 1215 (5th Cir. 1974). Valid. Laredo.
United States v. Valdez, 456 F.2d 1140 (5th Cir. 1972). Valid. Brownsville.
Stassi v. United States, 410 F.2d 946 (5th Cir. 1969). Valid. Bus depot in McAllen.
Walker v. United States, 404 F.2d 900 (5th Cir. 1968). Valid. Roadblock at Carrizo Springs.
Marsh v. United States, 344 F.2d 317 (5th Cir. 1965). Valid. Freer.

H. *Probable Cause*
United States v. Solis, 469 F.2d 1113 (5th Cir. 1972), cert. denied, 410 U.S. 932, 93 S.Ct. 1375, 35 L.Ed.2d 594 (1973). Valid. Harlingen.
United States v. Acosta, 411 F.2d 627 (5th Cir. 1969). Valid. 8 mi. S. of Marfa.
Bailey v. United States, 386 F.2d 1 (5th Cir. 1967), cert. denied, 392 U.S. 946, 88 S.Ct. 2300, 20 L.Ed.2d 1408 (1968). Valid. 70 mi. N. of Falcon (border port).
Smith v. United States, 385 F.2d 34 (5th Cir. 1967). Valid. Three Rivers.
Maltos-Roque v. United States, 381 F.2d 130 (5th Cir. 1967). Valid. Commanche.
Brett v. United States, 377 F.2d 520 (5th Cir. 1967), cert. denied, 392 U.S. 945, 88 S.Ct. 2289, 20 L.Ed.2d 1407 (1968). Valid. Unspecified location.

I. *Other*
United States v. Warren, 451 F.2d 582 (5th Cir. 1971). Valid. Unspecified location.
United States v. Rodriguez Reinosa, 427 F.2d 150 (5th Cir. 1970). Valid. Unspecified location.

"border searches" for aliens have been held to meet the reasonableness standards of the Fourth Amendment.

Because the congressional authority for permanent checkpoints, temporary checkpoints, and roving patrols is contained in the same Act, the recent decision of the Supreme Court in Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), concerning roving patrols, requires us to reconsider the constitutionality of all warrantless searches conducted pursuant to 8 U.S.C.A. § 1357(a). Under section 287(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1357(a), Congress extended the warrantless border search to empower any officer or employee of the Service without a warrant,

> (3) within a reasonable distance from any external boundary of the United States, to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle, . . . for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States.

8 U.S.C.A. § 1357(a)(3).

In *Almeida-Sanchez*, a roving patrol of the United States Border Patrol stopped a Mexican citizen holding a valid United States work permit, searched his vehicle, and discovered a large quantity of marijuana. The search was conducted some 25 miles north of the Mexican border, on an east-west state highway in California which is at all points at least 20 miles north of the border. Between the state highway and the border lies a major east-west federal highway. After conviction of having knowingly received, concealed and facilitated the transportation of illegally imported marijuana in violation of 21 U.S.C.A. § 176(a), defendant appealed on the ground that the search of his automobile by the roving patrol was unconstitutional under the Fourth Amendment and that, under the exclusionary rule of Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1913), the marijuana should not have been admitted as evidence against him. The Ninth Circuit upheld the validity of the search, United States v. Almeida-Sanchez, 452 F.2d 459 (9th Cir. 1971), pursuant to 8 U.S.C.A. § 1357(a).

Reversing the decision of the Ninth Circuit, the Supreme Court held that a warrantless search for aliens by a roving border patrol without probable cause or consent violates the Fourth Amendment guarantee against unreasonable searches and seizures. Finding no support for such a breach in either its automobile search decisions or its administrative decisions, the Court rejected the Government's argument that the search was justified under 8 U.S.C.A. § 1357(a). "It is clear, of course, that no Act of Congress can authorize a violation of the Constitution." 413 U.S. at 272, 93 S.Ct. at 2539. Mr. Justice Stewart delivered the opinion of the Court in which Justices Douglas, Brennan, Marshall and Powell joined. Mr. Justice Powell filed a concurring opinion and Mr. Justice White filed a dissenting opinion in which the Chief Justice and Justices Blackmun and Rehnquist joined.

Simplistically speaking, the *holding* in *Almeida-Sanchez* could not control the constitutional disposition of a permanent checkpoint case because there was no case and controversy before that Court about permanent checkpoints. The Court specifically refused to take the case on the facial constitutionality of the authorizing Act, and approached the case on the constitutionality of the search under the facts of that case.

The argument then is that we should make an informed guess in the light of the opinions in *Almeida-Sanchez* as to what a majority of the Justices of the Court will do when faced with a permanent checkpoint attack. The Ninth Circuit en banc has recently engaged in this exercise in a seven to six multiple opinion case. United States v. Bowen, 500 F.2d 960 (9th Cir. 1974), cert. granted, —— U.S. ——, 95 S.Ct. 40, 41 L.Ed.2d 47 (1974).

Considering both the language of the *Almeida-Sanchez* opinion and the fact

that the statutory authorization for warrantless searches at fixed checkpoints is the same as that for roving patrols, 8 U.S.C.A. § 1357(a), the court in the *Bowen* case concluded that the Supreme Court did not mean ". . . to leave intact the Government's asserted right to establish fixed checkpoints anywhere within 100 miles of the border." 500 F.2d at 963. The court continued,

> Surely, searches at these checkpoints, like searches by roving patrols have the effect of violating the "right to free passage without interruption or search" of "those lawfully within the country . . .." Such searches, therefore, must meet constitutional standards regardless of their utility in carrying forward the difficult mission of the Border Patrol.

500 F.2d at 963.

In significant part, the decision of the *Bowen* court hinges upon a prediction of how a majority of the Supreme Court would hold. The seven-judge majority of the en banc court in *Bowen* is convinced that Mr. Justice Powell would join with Justices Stewart, Douglas, Brennan and Marshall in the application of *Almeida-Sanchez* to fixed checkpoints. The six-judge minority in *Bowen* is convinced that he would not. Stating that the majority ignored the significance of Justice Powell's limited concurrence, Judge Wallace, speaking for the *Bowen* minority, disputes the majority's holding that *Almeida-Sanchez* outlaws searches at fixed checkpoints. By the minority's count, Mr. Justice Powell would vote with Justices White, Blackmun and Rehnquist in holding that ". . . warrantless searches for aliens without probable cause may be made at fixed checkpoints away from the border." 413 U.S. at 288, 93 S.Ct. at 2547.

The winners of this judicial conflict may be resolved in this term of the Supreme Court because certiorari has now been granted in *Bowen*, along with two other relevant cases from the Ninth Circuit, United States v. Peltier, 500 F.2d 985 (9th Cir. 1974), where the court decided 7–6 to apply *Almeida-Sanchez* retroactively to roving patrol cases, and United States v. Brignoni-Ponce, 499 F.2d 1109 (9th Cir. 1974), where a unanimous en banc court differed with the Tenth Circuit in holding that *Almeida-Sanchez* applies where a roving patrol stopped a vehicle under § 1357(a)(1) to interrogate persons believed to be aliens, as well as where border agents conduct searches under § 1357(a)(3). *See* United States v. Bowman, 487 F.2d 1229 (10th Cir. 1973).

It might be the better part of judicial discretion to delay our review of this case until the Supreme Court has ruled in the Ninth Circuit cases, but we believe that the parties are entitled to a decision. Although the Supreme Court has granted certiorari in the *Bowen* case, the decision of the Ninth Circuit in *Bowen* has two parts: first, the court held that the decision of the Supreme Court in *Almeida-Sanchez* applies to searches at permanent checkpoints conducted pursuant to § 1357(a) and second, the court held that *Almeida-Sanchez* would not apply retroactively in a permanent checkpoint case. On review, the Supreme Court may only decide the retroactivity issue which could determine the outcome of the case without the necessity of reaching the fixed checkpoint problem. Such a disposition would not control our decision here. In light of this possibility, our postponing decision in this case would merely delay the parties' efforts to resolve the instant case finally.

We hold that the decision of the Supreme Court in *Almeida-Sanchez* leaves unaltered the precedential effect of the case law of this Circuit concerning searches at permanent checkpoints.

While 8 U.S.C.A. § 1357(a) is the statutory authority for both roving patrols and permanent checkpoints, the operational differences of a roving border patrol and a permanent checkpoint are substantial. Prior to *Almeida-Sanchez*, a roving patrol could stop any vehicle within 100 miles of the border on a reasonable suspicion of a violation of the immigration laws and search for illegal

aliens.[3] Roving patrols leave unfettered discretion in one or two men as to who will be stopped and who will not be stopped. Unquestionably, the opportunity for abuse of discretion on the part of the border agents conducting roving patrols is great. The decision of the Supreme Court in *Almeida-Sanchez* served to check the violations of the Fourth Amendment rights which those searches caused.

At permanent checkpoints, the commitment of time, money, personnel, and the administrative decision for location of the search are all presumably such as to remove to a large extent the individual arbitrariness that might be available to roving agents. All vehicles pass through a permanent checkpoint and the occupants may be questioned concerning their citizenship. *See* 8 U.S.C.A. § 1357(a)(1). Once the border agents have stopped the vehicle to question its occupants, the agents then may search for aliens illegally in the United States, under the auspices of 8 U.S.C.A. § 1357(a)(3). A permanent checkpoint does not have the constitutionally frightening aspect of a roving patrol, halting vehicles at random and searching their interiors for illegal aliens. By definition and operation, a permanent checkpoint is permanently situated so that all travelers may have knowledge of its location and, thus, may avoid the checkpoint if they choose to travel by another route.

The new aphorism which has arisen from the opinion *Almeida-Sanchez* is that routine border searches may be conducted at the border or its "functional equivalent." While the term "functional equivalent of the border" may be novel, the principle of constitutional law which it embodies is the one which this Circuit has consistently applied in its decisions upholding the validity of searches conducted pursuant to 8 U.S.C.A. § 1357(a) at permanent checkpoints. Long before

the Supreme Court coined the phrase in *Almeida-Sanchez*, this Court implicitly treated permanent checkpoints as "functional equivalents" of the border by upholding the validity of warrantless searches for illegal aliens at such locations. The factors which made the search "reasonable" in United States v. McDaniel, 463 F.2d 129 (5th Cir. 1972), cert. denied, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973), the proximity of the checkpoint to the border, the permanent nature of the checkpoint, and the hours of operation, are characteristics which transform the checkpoint into the border's functional equivalent. The terminology may vary from decision to decision but the law abides unchanged.

■ Of course, at an international boundary, the search is not restricted to a § 1357 search for aliens but may be a complete, thorough search of the vehicle and its contents for contraband and anything else for which illegal entry may be sought. We need not consider here what kind of a "functional equivalent of the border" would permit such a search. Certainly the inland airport receiving international flights, an example used in Justice Stewart's opinion in *Almeida-Sanchez*, would seem to permit a complete search, not just a search for aliens. The inland crossroads example, however, might be restricted to a § 1357 search with all of the judicial gloss that has been superimposed upon the statute. Presumably these questions with all be legally tested on a case-by-case basis. We do not purport to decide here any more than the case at hand involving a § 1357 search for aliens at the Sierra Blanca permanent checkpoint. In so limiting our decision, we reject the idea that every vehicle must be shown to have probably crossed the border to be legally stopped at the Sierra Blanca checkpoint, however important that element might be to the kind of thorough

---

**3.** *See generally* United States v. Daly, 493 F.2d 395 (5th Cir. 1974); United States v. Miller, 492 F.2d 37 (5th Cir. 1974); United States v. Thompson, 475 F.2d 1359 (5th Cir. 1973). *See also* United States v. Byrd, 483 F.2d 1196 (5th Cir. 1973), modified, 494 F.2d 1284 (5th Cir. 1974); United States v. McKim, 487 F.2d 305 (5th Cir. 1973); United States v. Storm, 480 F.2d 701 (5th Cir. 1973).

search that can be made at an international boundary.

A description of the Sierra Blanca checkpoint may be helpful. The Sierra Blanca checkpoint is located approximately 75–85 miles southeast of El Paso, Texas, and 4 miles west of Sierra Blanca, Texas, on Interstate Highway 10. Leaving El Paso Interstate 10 parallels the United States-Mexico border in a southeasterly direction for approximately 50 miles, coming within two miles of the border itself at many places. Before reaching the checkpoint, Interstate Highway 10 turns in a northeasterly direction away from the border with the result that, at the checkpoint itself, the highway runs in an east-west direction.

Along the 85 mile stretch of road between El Paso and the Sierra Blanca checkpoint, there are three ports of entry. The first is located at Ysleta, Texas, a suburb of El Paso. The second port of entry is located at Fabens, Texas, approximately 30 miles southeast of Ysleta, and the third is situated at Fort Hancock, Texas, roughly 18 miles southeast of Fabens. Paralleling the border, the distance from the Fort Hancock port of entry to the Sierra Blanca checkpoint is about 30 miles.

The ports of entry at Fabens and Fort Hancock are opened at 6:00 a.m. and closed at 9:00 p.m. on a daily basis. When a port of entry is closed, a gate is positioned across the road to prevent traffic from proceeding. The fact that these ports are closed, however, does not mean vehicles or individuals cannot cross the border, inasmuch as there are numerous roads, both paved and dirt, which lead from the banks of the Rio Grande River, which marks the border, to Interstate Highway 10 and do not pass through a port of entry.

The Sierra Blanca checkpoint itself is situated 20 land miles and 14 air miles from the United States-Mexico border. Since July 8, 1973, the checkpoint has been manned 16 hours a day on weekdays and 24 hours a day on weekends, weather and manpower permitting. The hours of operation of the Sierra Blanca checkpoint are approximately 4:00 p.m. to 8:00 a.m.

The purpose of the instant checkpoint is to detect and apprehend aliens who have entered the United States illegally. Between November 1, 1972, and November 30, 1973, officials at the Sierra Blanca checkpoint apprehended 1,291 such aliens. Although the Quitman Mountains are immediately south of the checkpoint, there are various paths and trails leading from the border, through the mountains, into the United States and to Interstate Highway 10.

The Sierra Blanca checkpoint is permanent in nature. Approximately one mile west of the checkpoint on Interstate Highway 10, there is a sign which reads, "Inspection station, all vehicles exit one mile." Somewhat closer to the checkpoint, between one-half and three-fourths of a mile west, a second sign reads, "Form one lane right." One thousand yards west of the checkpoint, a third sign states, "Inspection station, all vehicles right lane."

During the hours that the Sierra Blanca checkpoint is open, there are cones positioned in the highway which direct all traffic onto a paved access road to the checkpoint. At the checkpoint itself, there are three stop signs, two with flashing red lights, and a trailer mounted on blocks which the checkpoint officials use as an office. Although all vehicles traveling east on Interstate Highway 10 pass through the checkpoint when it is in operation, the officials do not stop every vehicle and search for aliens. In practice the officials wave some cars and trucks through the checkpoint and stop others to question their occupants.

Certain of these many characteristics may be more important than others in establishing the Sierra Blanca checkpoint as a functional equivalent of the border. One, the checkpoint is permanent in nature. Two, all traffic is diverted through the checkpoint during its hours of operation just as all traffic would be channeled through a port of entry at the border itself. Three, the Sierra Blanca

checkpoint operates during the hours when the ports of entry at Fabens and Fort Hancock are closed. Four, Interstate Highway 10 parallels the border for some 50 miles before turning northeast to the checkpoint and the highway comes within two miles of the border itself in many points. Five, there are numerous roads, paths, trails which lead from the border to Interstate Highway 10 which do not pass through any port of entry. And, six, during one thirteen-month period officials at the Sierra Blanca checkpoint apprehended 1,291 aliens who had entered the United States illegally. *Cf.* United States v. Byrd, 483 F.2d 1196, 1199, n. 7 (5th Cir. 1973), modified, 494 F.2d 1284 (5th Cir. 1974). We need not decide which of these factors are absolutely necessary in order to hold that the synergistic effect of these physical and operational characteristics elevates the Sierra Blanca checkpoint to the status of the border's functional equivalent for a § 1357 search.

It must be kept in mind that along much of the Mexican-United States border runs the Rio Grande River, which, in spite of a name indicating contrary magnificence, can be driven across, waded across, and easily swum across at all times, and much of the time can be walked across without wetting a foot.[4] With so much access to a highway parallel to the border by aliens who could easily have walked across the border, we think the Fourth Amendment rule of reason would permit a search for those aliens of vehicles that may have taken them aboard after their arrival by other means within our boundaries. With almost 2000 miles of Mexican border from Brownsville, Texas, to San Diego, California, contiguous to four of the states of the Union, the impracticality of guarding every part where human crossing could be made should be so apparent

as to make inexorably reasonable some method of curtailing illegal entry such as established at the Sierra Blanca checkpoint.

We hold, therefore, that the search of Hart's vehicle by border agents at the Sierra Blanca checkpoint was a valid border search which met the Fourth Amendment requirement of reasonableness. Accordingly, the judgment of the district court is

Affirmed.

---

4. Not only below Ft. Quitman, but in many stretches of the river from the New Mexico-Colorado border to below Brownsville there has been no surface flow at various times. In some places the depth has varied from nearly 60 feet to a bare trickle or nothing. 19 Encyclopedia Britannica 346 (1971).