UNITED STATES

v.

**Airman Roman CARRILLO, FR 554–96–4221 Headquarters, 6570th Air Base Group Aerospace Medical Division (AFSC).**

ACM 21865.

U. S. Air Force Court of Military Review.

Sentence Adjudged 5 May, 1975.

Decided 3 Oct. 1975.

Appearances: Appellate counsel for the Accused: Colonel William E. Cordingly, Colonel Jerry E. Conner and Major John A. Cutts III. Appellate counsel for the United States: Colonel C. F. Bennett and Captain Frederick P. Waite.

## DECISION

EARLY, Judge:

Contrary to his pleas, the accused was convicted by general court-martial of possession of three pounds of marijuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The approved sentence consists of a bad conduct discharge.

Appellate defense counsel invite our attention to the errors submitted by the accused in his request for appellate representation and assert one additional error. We have considered these assertions and, with the exception of the assignment discussed below, are of the opinion that they either lack merit or were properly resolved against the accused in the review of the staff judge advocate.

In the remaining assignment of error, the accused and appellate defense counsel assert that the Government has failed to sustain its burden of justifying the search of the accused's automobile which revealed the marijuana. The material facts of record follow.

On the 17th of February 1975, at 1800 hours, Border Patrolman Santana was conducting a check of automobiles driving north on US 281 at a checkpoint seven miles south of Falfurrias, Texas. This checkpoint was permanently located approximately 65 air miles from the Mexican border. It was preceded by three signs warning of a stop

ahead and a large flashing stoplight. A Dodge panel van was used as an office and a communications center. The procedure followed was for one of the two border patrolmen assigned there to stand on the road checking traffic. When a car stopped for inspection, the patrolman would approach the car, identify himself and ask the occupants their citizenship. If they answered that they were United States citizens and the patrolman was otherwise satisfied, the car was waived through.

On the evening in question, Patrolman Santana stopped the car driven by the accused, and, as he asked the accused his citizenship, he detected a very strong odor of marijuana which was most prevalent toward the rear of the vehicle. At that moment a large German shepherd dog in the back seat lunged at Santana. Santana then told the accused to pull off the road for a closer inspection. He asked the accused and his passenger to get out of the car with the dog and went over to the passenger side door which had been left open. He looked into the back, and saw that the rear seat was ajar. In the space under the rear seat on the driver's side, he found a brown paper bag which contained half a brick of marijuana. Underneath this half brick, he discovered another full brick of marijuana wrapped in paper. Patrolman Santana testified that at the time he told the accused to pull over, he was satisfied that the occupants of the car were citizens, and that his reason for conducting the search was the strong odor of marijuana he detected in the car.

Based on these facts, appellate defense counsel assert that no legal basis existed for Santana's search of the accused's car. We disagree.

The subject of border patrol searches of cars has received must attention from the United States Supreme Court. In the case of *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), the Supreme Court held that a "roving border patrol" search of a car trunk,

conducted without probable cause to believe that there were aliens inside, violated the Fourth Amendment, and hence, the marijuana found therein was suppressed in accord with the exclusionary rule. The Court reasoned that, although the Immigration and Nationality Act [1] provides for warrantless searches of automobiles and other conveyances "within a reasonable distance from any external boundary of the United States" as authorized by regulations to be promulgated by the Attorney General, and that the Attorney General had defined "reasonable distance" as "within 100 air miles from any external boundary of the United States",[2] the search of "petitioner's automobile by a roving patrol, on a California road that lies at all points at least 20 miles north of the Mexican border, was of a . . . sort" that "violated the petitioner's Fourth Amendment right to be free of 'unreasonable searches and seizures.'" (*Almeida-Sanchez v. United States*, supra, at 273, 93 S.Ct. at 2540.) Left undecided at the time was the constitutionality of searches at "an established station near the border, [or] at a point marking the confluence of two or more roads that extend from the border . . . ." (*Almeida-Sanchez v. United States*, supra, at page 273, 93 S.Ct. at page 2539).

However, the Supreme Court answered its own reserved question in *United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 2588, 45 L.Ed.2d 623 (1975). There, the Border Patrol had stopped Ortiz at a permanent checkpoint some 66 road miles from the Mexican boarder. There was no special reason to suspect Ortiz of any crime, but a search of his trunk disclosed three aliens. The Court held:

A search, even of an automobile, is a substantial invasion of privacy. To protect that privacy from official arbitrariness, the Court always has regarded probable cause as the minimum requirement for a lawful search.

.     .     .     .     .

---

1. 8 U.S.C. § 1357(a)(3).

2. 8 CFR § 287.1.

We therefore . . . hold that at traffic checkpoints removed from the border and its functional equivalents, officers may not search private vehicles without consent or probable cause.

On its face, *Ortiz* promulgates the rule that we would expect to apply to the instant case. But, on the same day, in *Bowen v. United States*, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975), the Supreme Court, consistent with their earlier decision in *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), refused to apply the *Ortiz* rule retroactively.

Thus, we must return to the Federal law applicable on 17 February 1975, the day of the search, to determine the legality of the seizure of the marijuana which forms the basis for the charge before us.

As might be expected, the Court of Appeals for the Fifth Circuit (whose jurisdiction includes Texas) has ruled many times on the legality of border searches, including several times on checkpoints in the vicinity of Falfurrias, Texas. In *United States v. Diemler*, 498 F.2d 1070, 1072 (5th Cir. 1974), Diemler was stopped at a checkpoint near Falfurrias, which the Court found was temporary, and a search of his car disclosed seven bricks of marijuana. The Court held:

It is the government's burden to show the existence of reasonable suspicion of a Customs or Immigration violation. . . . In this case, the record clearly demonstrates that the government has failed to bear its burden of showing any reasonable suspicion of criminal activity. Totally lacking from the record is any fact which might have given rise to a suspicion on the part of the officers of illegal activity.

    .    .    .    .    .

Finally, the government has totally failed to demonstrate any nexus with the border.

    .    .    .    .    .

As this court held more than a year before *Almeida-Sanchez*, "proximity to the frontier does not automatically place a 100-mile strip of citizenry within a deconstitutionalized zone, with its attendant de-escalation of Fourth Amendment re-

quirements." *United States v. McDaniel*, 463 F.2d 129 (5th Cir. 1972).

This case seems to establish the rule that probable cause must exist before a constitutionally permissible search may be made at a temporary checkpoint (as contrasted to a roving patrol of the sort condemned in *Almeida-Sanchez*, supra). However, one year later the same Court in *United States v. Hart*, 506 F.2d 887, 889 (5th Cir. 1975), held:

On every occasion that the question has previously been presented to us, we have upheld, as constitutional, searches conducted pursuant to 8 U.S.C.A. § 1357(a) at permanent checkpoints.

The Court then listed all of its cases concerning the various checkpoints within its jurisdiction, including several in the general area of Falfurrias. Examination of these decisions, so conveniently shown, establishes that where the checkpoint was "temporary," the search without probable cause was held invalid, while at "permanent", or "temporary/permanent," checkpoints, the search was held valid. In distinguishing previous cases, the Court said:

From this compilation, it can be seen that we have never held unconstitutional a search with the characteristics of a border search when made at a permanent checkpoint. Nor have we even held invalid a search at what we have called a permanent/temporary checkpoint where the physical location of the checkpoint may be changed from time to time . . . . (*United States v. Hart*, supra, at pages 891–2.)

Thus, the permanency of the checkpoint determines the validity of the warrantless search of vehicles (assuming, of course, its requisite proximity to the border as defined by the Attorney-General). While we do not view these decisions as having the consistency found by the Fifth Circuit, we have no difficulty in understanding the rationale set forth in *Hart*.

In the instant case, Patrolman Santana testified that the checkpoint at Falfurrias was a "permanent checkpoint" and that it had been in that particular location for

"approximately a year." He described it as a

permanent type set up which has four large area lights; it has three warning signals, regular traffic signals warning that there will be a stop ahead. It says, "Slow Stop Ahead, U.S. Officers" and then the stop sign. And southbound we have two caution signs: "Do not pass" and "Slow." That is to prevent vehicles southbound from passing our check point and running into the traffic that we have stopped there for inspection.

He testified that the lights for the checkpoint are mounted on poles placed there for the purpose of the checkpoint, and that there are two permanently parked vans associated with it. He said the checkpoint is manned 24 hours a day, except in inclement weather when it is hazardous to travel.

■ On this posture of the evidence, we hold that the Falfurrias checkpoint was, at least, "temporary/permanent" within the definition set out in *Hart,* supra. Thus, the search of the accused's car was valid.

Although we find that under the law applicable at the time Santana did not need probable cause to search the accused's car, there is, nonetheless, sufficient evidence of record to support Santana's action on this ground.

The power of the Border Patrol to stop vehicles has not been limited by the holding in *Ortiz,* supra. The majority opinion reserved the question of "whether Border Patrol officers may lawfully stop motorists for questioning at an established checkpoint without reason to believe that a particular vehicle is carrying aliens." *United States v. Ortiz,* 422 U.S. 891, 898, fn. 3, 95 S.Ct. 2585, 2589 n. 3, 45 L.Ed.2d 623 (1975). Mr. Justice Rehnquist, in his concurring opinion, was more specific:

I wish to stress, however, that the Court's opinion is confined to full searches, and does not extend to fixed-checkpoint stops for the purpose of inquiring about citizenship. (*United States v. Ortiz,* supra, at page 898, 95 S.Ct. at page 2589.)

■ Accordingly, even under the law as presently applicable, Santana clearly was authorized to stop the accused's car in order to inquire as to his citizenship. We must decide, therefore, whether Santana's detection of the odor of marijuana justified his subsequent search of the car's interior.

At trial Santana testified:

A. On 2–17–75 at 1800 hours I was manning the checkpoint; I had the point, and this red Volkswagen approached the checkpoint and stopped for inspection. In the Volkswagen were two subjects. I bent over to talk to them since the Volkswagen was pretty low—a pretty low car, and while I was asking them what their citizenship was I detected the odor of marijuana.

Q. Had you ever previously detected that before?

A. Many times. Yes, sir, many times.

. . .

Q. Now you say you detected an odor of marijuana. Would you describe its strength, please?

A. It was pretty strong, sir. It was enough for me to detect that it was marijuana.

. . . . .

Q. What was your purpose in searching?

A. I was positive there was marijuana in there because I detected a strong odor of it.

. . . . .

On cross-examination Santana denied any special training in drug detection:

Q. Has your ability as a marijuana sniffer ever been tested clinically—in clinical surroundings?

A. No sir.

In *United States v. Bowman,* 487 F.2d 1229 (10th Cir. 1973), an almost identical fact situation was presented. Bowman was stopped for a citizenship check, and when he rolled down the window to respond to questions, the patrolman detected the smell of marijuana. He directed Bowman to pull over and open his trunk. Subsequently, he found a footlocker and a trunk containing

marijuana. In finding that smell alone could satisfy the probable cause requirement for a warrantless search, the Court held:

The record shows that on numerous occasions Agent Goad had smelled marijuana while on duty and that he was familiar with the odor. The court below made the specific finding that Agent Goad did, in fact, detect the odor of marijuana. The search of Bowman's car was based upon probable cause.

. . . . .

Agent Goad's brief detention of appellant Bowman for the limited purpose of determining his citizenship was entirely justified. Bowman's car having been stopped for this purpose, probable cause for the search of the vehicle arose upon Agent Goad's detection of the odor of marijuana. The search and seizure under the circumstances was entirely valid. (*United States v. Bowman*, supra, at page 1231.)

In *United States v. McCormick*, 468 F.2d 68, 73 (10th Cir. 1972), cert. denied, 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1973), a border patrolman smelled marijuana when the window was rolled down to answer a citizenship check. The Court held:

A border patrol agent who has learned how to identify marijuana by sight or by its odor has probable cause to search and seize and to effect arrests upon discovery of marijuana in a vehicle.

In *United States v. Anderson*, 468 F.2d 1280 (10th Cir. 1972), the smell of marijuana, in addition to the view of a "roach" and a black plastic bag often used to transport marijuana, constituted probable cause for a search.

In *Bowen v. United States*, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975), Bowen was ordered to open his camper door ostensibly to permit a check for aliens, but upon the opening, the patrolman smelled a strong odor of marijuana. The ensuing search revealed 356 pounds of marijuana. Although this case was ultimately resolved solely on the issue of whether *Almeida-Sanchez*, supra, applied to fixed point searches, the Supreme Court noted:

The search of petitioner's camper was not invalid . . . because the agent was engaged in a search for aliens, legal under the Ninth Circuit's decisions, when he developed probable cause to believe that the camper contained marijuana. (*Bowen v. United States*, supra, at page 918, fn. 1, 95 S.Ct. at page 2572.)

■ We believe the above-cited case law supports the proposition that the detection of the smell of marijuana constitutes sufficient cause to conduct a search for the marijuana. Cf. *United States v. Owens*, 48 C.M.R. 636 (A.F.C.M.R.1974), affirmed by a divided Court, —— U.S.C.M.A. ——, —— C.M.R. —— (16 Apr. 1975).

■ We are left then with the final question of whether Patrolman Santana's qualifications to detect marijuana by smell are sufficiently established by the record. We note that Santana stated that he had previously detected marijuana "many times." As we have held before, "a witness need not be a chemist, nor be possessed of training that would qualify him to identify the substance in question by chemical analysis, in order to give his opinion as to the identity of a particular drug", and, "[w]hat is required is familiarity of the drug and its properties, physical or chemical, and this familiarity may come from formal or informal training and experience." *United States v. Jackson*, 49 C.M.R. 881, 883 (A.F. C.M.R.1975), pet. denied, —— C.M.R. —— (24 Apr. 1975). There is nothing in the record to contradict Santana's assertion of familiarity with the smell of marijuana, and it does not strain credulity to believe that one in his position would be exposed to such a drug with a regularity far in excess of the ordinary layman; indeed, with such frequency to make him a "lay expert."

We also note that Santana has been a border patrolman for approximately nine years. We think the experience of a long-time border patrolman in the area of familiarity with certain illegal drugs is akin to that experience of Officer McFadden in detection of thievery from stores in Cleveland

which was recognized in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Our reading of the border patrol cases cited above and others shows that the experience of the patrolmen in detecting illegal drugs is almost as extensive as in detecting illegal aliens. Under all the circumstances of this case we hold that Patrolman Santana's sense of smell was sufficiently qualified to give him probable cause to search the accused's car after he believed he smelled marijuana inside.

Accordingly, we find no illegality in the stopping of the accused's car by Patrolman Santana for the purpose of a citizenship check, and we find no lack of authority to search for marijuana once he smelled it in the car.[3] See 49 U.S.C. §§ 781, 787; *General Finance Corp. v. United States*, 333 F.2d 681 (5th Cir. 1964); *United States v. McCormick*, 468 F.2d 68 (10th Cir. 1972); *United States v. Bowman*, 487 F.2d 1229 (10th Cir. 1973); *Bowen v. United States*, supra; *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); cf. *United States v. Carson*, 22 U.S.C.M.A. 203, 46 C.M.R. 203 (1973); *United States v. Greene*, 44 C.M.R. 420 (A.C.M.R.1971), pet. denied, 44 C.M.R. 939 (1971).

The findings of guilty and the sentence are

Affirmed.

LeTARTE, Chief Judge, and ORSER, Judge, concur.

---

**3.** Santana was designated as a United States Customs Patrol Inspector, which gave him the power to enforce the United States customs laws and regulations.